Stewart MATTHEW, Plaintiff
Below, Appellant,

v.

FLÄKT WOODS GROUP SA,
Defendant Below,
Appellee.

No. 150, 2012.

Supreme Court of Delaware.

Submitted: Sept. 19, 2012.
Decided: Nov. 20, 2012.
Reargument Denied Dec. 21, 2012.

Thad J. Bracegirdle, Esquire (argued), Wilks, Lukoff & Bracegirdle, LLC, Wilmington, Delaware for Appellant.

Seth J. Reidenberg, Esquire, The Chartwell Law Offices, LLP, Wilmington, Delaware. Of Counsel: Mark A. Thornhill, Esquire (argued) and Kersten Holzhueter, Esquire, Spencer Fane Britt & Browne LLP, Kansas City, Missouri, for Appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices, constituting the Court en Banc.

BERGER, Justice:

This is an appeal from a decision dismissing a complaint against a foreign business entity for lack of personal jurisdiction. The foreign company allegedly conspired with other defendants to divest appellant of his interest in a lucrative joint venture. That plan was accomplished, in part, by causing the dissolution of a Delaware limited liability company co-founded by appellant. Under the "conspiracy theory" of personal jurisdiction, a plaintiff must allege facts from which one can infer that a foreign defendant knew or should have known that the conspiracy would have a Delaware nexus. The trial court found that the foreign company did not know about the Delaware connection until after the limited liability company had been dissolved. As a result, the trial court dismissed for lack of personal jurisdiction.

The trial court's analysis is flawed in two respects. First, the applicable standard is whether the foreign entity knew or should have known that it was conducting activity in Delaware. Here, even if the record facts do not establish that appellee knew about the dissolution before it occurred, they establish that appellee should have known that it was dealing with a Delaware company. Second, the conspiracy did not begin or end with the dissolution of the Delaware company. Appellee learned that its business partner had been a Delaware entity shortly after the dissolution, and the alleged conspiracy continued long after that date. For both of these reasons, we reverse.

## Factual and Procedural Background

Aeosphere LLC was a Delaware limited liability company, founded by Stewart Matthew and Christophe Laudamiel in 2008 for the purpose of developing and marketing fragrance technologies. In 2009, Action 1 SRL, an Italian company owned by Roberto Capua, invested 1.55 million euros in Aeosphere, in return for which Action received 300 preferred membership units. Matthew and Laudamiel each owned 350 common membership units.

Under its Amended and Restated Limited Liability Agreement ("LLC Agreement"), Aeosphere was to be managed by a three member board of managers. At all relevant times, Matthew, Laudamiel and Capua were the three board members. Generally, both Matthew and Laudamiel, as Co–CEOs, had to agree on any actions requiring board approval. If they were deadlocked, Capua cast the tie-breaking vote. The dissolution of Aeosphere required either the unanimous approval of the board or a majority vote by the holders of the LLC's common units.

Within weeks after its formation, Aeosphere entered into a Collaboration Agreement with Fläkt Woods Group SA ("Fläkt Woods"), a Swiss family of companies that is a global supplier of air climate solutions for buildings and industrial activities.[1] Under the Collaboration Agreement, Aeosphere invested about $200,000 to develop air fragrancing applications of a new technology owned by Battelle Memorial Institute. Aeosphere was to be Fläkt Woods' exclusive supplier of scented media for use in Fläkt Woods' HVAC systems, and was to receive royalties from the sale of HVAC systems as long as the Battelle technology was being used. Even if Fläkt Woods did not use the Battelle technology, Aeosphere would remain as Fläkt Woods' exclusive supplier of scented media for 10 years.

In the summer of 2009, Matthew's relationship with Laudamiel soured, in part because Matthew did not agree to hire Laudamiel's spouse. A few months later, Matthew asked Laudamiel and Capua to review Aeosphere's financial condition and to set the 2010 budget. They refused. Matthew surmises that their refusal was financially motivated, because Action would have been required to loan more money to the company if Aeosphere showed a "Salary Shortfall." In January 2010, Capua told Neil Yule, who represented Fläkt Woods, about the internal dispute.

Fläkt Woods did not want to be in a joint venture with a struggling company. Capua proposed that Aeosphere be split up, and that its primary assets and contracts be transferred to a new entity under Laudamiel and Capua's control. The new entity would continue Aeosphere's joint venture with Fläkt Woods, and Matthew would be free to deal with Fläkt Woods on his own. Fläkt Woods agreed to this arrangement, but Matthew did not. In April 2010, Yule pressured the members of Aeosphere to resolve their differences, or risk losing Fläkt Woods as a partner. Yule also made it clear, in follow-up emails, that Fläkt Woods considered Laudamiel to be the indispensable member of the Aeosphere team. Yule ultimately asked Matthew to withdraw from Aeosphere and allow Fläkt Woods to continue to do business with Laudamiel and Capua. Again, Matthew declined. In an April 27, 2010 email, Yule advised that

---

**1.** One of the Fläkt Woods family of companies is SEMCO LLC, a Missouri company that provides ventilation and air treatment products to companies throughout the United States, including Delaware.

Fläkt Woods wanted this issue resolved in a matter of days.

With Matthew refusing to step aside, Laudamiel and Capua decided to dissolve Aeosphere. They called an emergency board meeting on May 3, 2010 to consider and vote on terminating all employees, closing all facilities, and dissolving the company. Matthew notified them that he would not be attending, and that he did not consent to the dissolution of the company. Aeosphere's counsel advised Laudamiel and Capua that a dissolution could not be approved at an emergency meeting, and that dissolution required the unanimous vote of either the board or of the holders of the common units. Nonetheless, at the May 4, 2010 meeting, Laudamiel and Capua voted for Aeosphere to cease operations and dissolve as soon as practicable.

Matthew alleges that Fläkt Woods supported Laudamiel and Capua's unlawful scheme to exclude Matthew by dissolving Aeosphere. On May 5, 2010, Matthew notified Yule that Laudamiel and Capua had taken steps to dissolve Aeosphere, and that those actions were unlawful. Matthew warned that any further exploitation of Aeosphere's assets would be challenged. On May 10, 2010, Yule responded that he was seeking advice regarding the dissolution, but that he was relying on the "official notification" from Aeosphere's directors that the company was dissolved. On May 24, 2010, Yule explained that he and his colleagues were concerned about the formal status of Aeosphere, and that, after an exchange of correspondence he was shown copies of the board minutes and the certificate of cancellation. Those documents apparently satisfied Fläkt Woods, as Yule stated:

The minutes appeared to describe a correctly constituted Board Meeting and it is clear that this meeting took a unanimous decision to close the firm. If you have concerns regarding the process that led to this closure then you are of course free to raise this with your fellow directors, but we would suggest that this would be a private matter between you and your former directors.... [2]

A few days before the Aeosphere certificate of cancellation was filed with the Delaware Secretary of State's Office, a new company—Dreamair LLC—was registered in Delaware. According to Dreamair's website: 1) Laudamiel heads that company; 2) Dreamair engages in the same business as Aeosphere; and 3) Fläkt Woods is one of its partners. At his deposition, Yule confirmed that Laudamiel and Capua formed this new venture and that Fläkt Woods has been doing business with and generating revenues from Dreamair's scent devices.

Matthew's complaint, filed on November 5, 2010, names Laudamiel, Capua, Action, Fläkt Woods, and SEMCO as defendants. As amended, the complaint alleges that, after the dissolution and continuing to the present, Laudamiel, Capua and Fläkt Woods have been misappropriating Aeosphere's assets, including intellectual property, proprietary fragrance formulations, and technology. It includes claims against Fläkt Woods for: 1) aiding and abetting Laudamiel and Capua's breaches of fiduciary duties; 2) tortious interference with contractual relations; 3) unjust enrichment; and 4) civil conspiracy. Fläkt Woods moved to dismiss for lack of personal jurisdiction. The Court of Chancery granted the motion, and this appeal followed.

2. Appellant's Appendix, A–858.

## Discussion

■ We decide whether a Delaware court has jurisdiction over a nonresident defendant in a two-step analysis. First, the court must determine whether Delaware's long arm statute, 10 *Del. C.* § 3104(c), is applicable. If so, the court must decide whether subjecting the non-resident defendant to jurisdiction would violate due process. Under settled law, a nonresident defendant must have sufficient "minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." [3]

■ In *Istituto Bancario Italiano, SpA v. Hunter Engineering Co., Inc.,* [4] this Court analyzed and adopted what is known as the conspiracy theory of personal jurisdiction. It is based on the legal principle that one conspirator's acts are attributable to the other conspirators. Thus, "if the purposeful act or acts of one conspirator are of a nature and quality that would subject the actor to the jurisdiction of the court, all of the conspirators are subject to the jurisdiction of the court." [5] The Court established a five-part test to determine jurisdiction under a conspiracy theory:

[A] conspirator who is absent from the forum state is subject to the jurisdiction of the court, assuming he is properly served under state law, if the plaintiff can make a factual showing that: (1) a conspiracy to defraud existed; (2) the defendant was a member of that conspiracy; (3) a substantial act or substantial effect in furtherance of the conspiracy occurred in the forum state; (4) the defendant knew or had reason to know

of the act in the forum state or that acts outside the forum state would have an effect in the forum state; and (5) the act in, or effect on, the forum state was a direct and foreseeable result of the conduct in furtherance of the conspiracy. [6]

The trial court held that Matthew satisfied the first three *Istituto Bancario* requirements. The complaint adequately alleges that Laudamiel, Capua, and Fläkt Woods conspired to "force [Matthew] out of Aeosphere and deprive him of his equity stake in the company." [7] In addition, filing Aeosphere's certificate of cancellation in Delaware was a substantial step in furtherance of the conspiracy. But, the trial court determined that Fläkt Woods did not know that Aeosphere was a Delaware company, or that its certificate of cancellation would be filed here, until after the conspiracy had been completed. For that reason, the trial court held that Matthew failed to satisfy the fourth *Istituto Bancario* requirement.

■ As noted at the outset, the first step in deciding personal jurisdiction is whether the foreign defendant is subject to jurisdiction under the Delaware long arm statute. The trial court never reached this issue, because it held that Fläkt Woods was not subject to personal jurisdiction as a matter of constitutional law. This Court finds that the long arm statute reaches the alleged conduct. Under § 3104(c)(1), a court may exercise personal jurisdiction over a nonresident who, "in person or through an agent ... [t]ransacts any business or performs any character of work or service in the State...." Filing a certificate of cancellation is the transaction of

---

**3.** *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (Internal quotation omitted).

**4.** 449 A.2d 210 (Del.1982).

**5.** *Id.* at 222.

**6.** *Id.* at 225.

**7.** *Matthew v. Laudamiel,* 2012 WL 605589, at *7 (Del.Ch.).

business in Delaware within the meaning of § 3104(c)(1).[8] Since Fläkt Woods' alleged co-conspirators transacted business in Delaware, Fläkt Woods is subject to personal jurisdiction under the long arm statute.

■ Although Fläkt Woods challenged the applicability of the long arm statute, the parties and the trial court focused on the second step of the analysis—whether Fläkt Woods has minimum contacts with Delaware under *Istituto Bancario*. The trial court determined that Matthew met his burden of establishing *Istituto Bancario's* first three requirements: 1) there was a conspiracy to defraud Matthew; 2) Fläkt Woods participated in that conspiracy; and 3) the filing of the Aeosphere certificate of cancellation in Delaware was a critical step in furtherance of the conspiracy. But the trial court found that there was no record support for the fourth requirement—that Fläkt Woods knew or had reason to know that the conspiracy had a Delaware nexus.

The trial court acknowledged that Yule was being kept informed of events relating to Matthew's ouster. Matthew emailed Yule on May 10, 2010, advising him that Laudamiel and Capua had taken steps to dissolve Aeosphere and that their actions were unlawful. Yule responded the same day, stating that he had been given "official notification" of the dissolution the previous week. Yule also said that he was seeking advice about how that impacted Fläkt Woods. It was not until May 24, 2010, however, that Yule acknowledged having received a copy of the certificate of cancellation, which showed that Aeosphere was a Delaware company. From this evidence, the trial court concluded that Fläkt Woods did not know that Aeosphere was a Delaware company until after the certificate of cancellation had been filed. Because the trial court found that the conspiracy consisted only of removing Matthew from the company, it held that the conspiracy was accomplished at the time the certificate of cancellation was filed, which was before Fläkt Woods learned that there was a Delaware nexus.

We disagree with the trial court's analysis of both Fläkt Woods' knowledge and the scope of the conspiracy. Although there is no direct evidence that Fläkt Woods knew that Aeosphere was a Delaware company before the company was formally dissolved, there are several facts that support such an inference. First, the Collaboration Agreement, as amended, contemplated a joint venture lasting at least 10 years. Fläkt Woods is a family of companies that describes itself as a global supplier of air solutions, with factories throughout the United States, Europe and Asia. Given its global activities and sophistication, one would expect Fläkt Woods to have performed a minimal level of due diligence before entering into a relatively long term contract with a startup company like Aeosphere. By that process, Fläkt Woods would have learned that Aeosphere was a Delaware company long before its dissolution.

Second, Yule's May 10, 2010 email reveals that he was informed of the May 4th board meeting within a day or two after the meeting ("last week"), and that he was seeking advice about Aeosphere's closure. Yule knew that Matthew was disputing the legality of the board's decision. He also knew that Fläkt Woods intended to continue its business arrangement with the two other members of Aeosphere. Given those circumstances, one would expect someone at Fläkt Woods to have inquired into the matter promptly in order to avoid becom-

**8.** *Sample v. Morgan,* 935 A.2d 1046, 1057 (Del.Ch.2007).

ing embroiled in litigation. Any such inquiry would have revealed Aeosphere's status as a Delaware company.

These facts support an inference that Fläkt Woods knew about the Delaware nexus before Aeosphere was dissolved on May 12th. Even if the record did not establish, by inference, that Fläkt Woods actually knew about Aeosphere, those same facts certainly establish that Fläkt Woods should have known. Fläkt Woods was entering into a long term agreement. It had never done business with Aeosphere or its members. Simple prudence would require that Fläkt Woods investigate basic information about its new joint venturer, including its status as a Delaware company. We conclude that Fläkt Woods had reason to know that Aeosphere was a Delaware company.

In any event, the record establishes that Fläkt Woods knew Aeosphere was a Delaware company no later than May 24, 2010. The trial court noted that fact, but found it unhelpful because by that time Aeosphere had already been dissolved. The trial court held that the conspiracy was completed when the certificate of cancellation was filed in Delaware. It disregarded, as conclusory, allegations that Fläkt Woods conspired with Laudamiel and Capua to misappropriate Aeosphere's assets.

The complaint alleges that one of Aeosphere's most valuable assets was the Collaboration Agreement, which was worth $10–$20 million in 2009.[9] Under that agreement, Aeosphere was to be the exclusive designer and supplier of scented media for use in Fläkt Woods' HVAC systems.[10] When tensions arose among the members of Aeosphere, Fläkt Woods asked Matthew to withdraw from the company or allow Fläkt Woods to proceed with the joint venture without him.[11] Laudamiel and Capua purportedly dissolved Aeosphere, and wrongfully assigned Aeosphere's intellectual property, fragrance formulae, and "scent organ" technology to themselves.[12] Thereafter, Laudamiel, Capua, and Fläkt Woods essentially continued the joint venture as described in the Collaboration Agreement.[13]

These allegations do more than describe a conspiracy to oust Matthew and deprive him of his stake in Aeosphere. They identify specific assets that Laudamiel and Capua allegedly misappropriated as part of a scheme to exploit those assets with Fläkt Woods. The dissolution of Aeosphere was not the end point of the conspiracy; it was one of the means by which the conspiracy was effectuated. Because the alleged conspiracy continued after Aeosphere's dissolution, Fläkt Woods' knowledge of the Delaware nexus as of May 24, 2010 satisfies *Istituto Bancario's* fourth requirement for personal jurisdiction.

■ The last *Istituto Bancario* requirement is that the act in Delaware was a "direct and foreseeable result of the conduct in furtherance of the conspiracy."[14] As noted, Fläkt Woods allegedly conspired with Laudamiel and Capua to oust Matthew from their business venture and to misappropriate Aeosphere's assets. A critical step in the conspiracy was Aeosphere's dissolution, which was effectuated

---

9. Appellant's Appendix, A269–70 (Second Amended Verified Complaint, ¶ 16).

10. *Ibid.*

11. Appellant's Appendix, A–275–76 (Second Amended Verified Complaint, ¶ 27–29).

12. Appellant's Appendix, A–279–80 (Second Amended Verified Complaint, ¶ 38–39).

13. Appellant's Appendix, A–280–81 (Second Amended Verified Complaint, ¶ 40–41).

14. *Istituto Bancario, supra,* at 225.

by the filing of a certificate of cancellation in Delaware. These facts satisfy *Istituto Bancario's* foreseeability requirement.

## Conclusion

Based on the foregoing, the judgment dismissing this action against Fläkt Woods for lack of personal jurisdiction is reversed, and this matter is remanded for further proceedings. Jurisdiction is not retained.