COURT OF CHANCERY
OF THE
STATE OF DELAWARE

JOHN W. NOBLE
VICE CHANCELLOR

417 SOUTH STATE STREET
DOVER, DELAWARE 19901
TELEPHONE: (302) 739-4397
FACSIMILE: (302) 739-6179

November 12, 2014

Thad J. Bracegirdle, Esquire
Wilks, Lukoff & Bracegirdle, LLC
1300 North Grant Avenue, Suite 100
Wilmington, DE 19806

Seth J. Reidenberg, Esquire
Tybout, Redfearn & Pell
750 Shipyard Drive, Suite 400
Wilmington, DE 19801

Re: *Matthew v. Laudamiel*
C.A. No. 5957-VCN
Date Submitted: August 7, 2014

Dear Counsel:

Defendant Fläkt Woods Group SA's ("Fläkt Woods") potential liability is premised upon its role in the efforts of Defendant Christophe Laudamiel ("Laudamiel") and, to a lesser extent, Defendant Roberto Capua ("Capua") to rid Aeosphere LLC ("Aeosphere") of Plaintiff Stewart Matthew ("Matthew").[1]

---

[1] Fläkt Woods has moved for summary judgment on Counts III (aiding and abetting breach of fiduciary duties), IV (tortious interference with contractual relations, VI (unjust enrichment), and VII (civil conspiracy) of Matthew's complaint. The motion was directed at the Third Amended Verified Complaint which has been superseded by the Fourth Amended Verified Complaint, which added Fläkt Woods Limited ("FWL") as a defendant. The claims against Fläkt Woods do not vary materially between the two complaints. For purposes of this

There is no question that Fläkt Woods wanted Aeosphere to resolve its internal problems and that it wanted to do business with Laudamiel because he had the knowledge which would be useful to it. Neil Yule ("Yule") represented Fläkt Woods in its dealings with Aeosphere. Evidence of any wrongful conduct by him is sparse. That he (and therefore Fläkt Woods) wanted the entity's internal disputes resolved and wanted to do business with Laudamiel is not objectionable. Nor is there any basis for criticism if he expressed those views. The problem—in a summary judgment setting where the facts must be viewed in Matthew's favor and the reasonable inferences also must be drawn in his favor—is that the record suggests that Yule may have gone beyond merely expressing his (and Fläkt Woods') goals and desires.

---

motion, reference to Fläkt Woods also reaches FWL. They are entitled to summary judgment if they can show "that there is no genuine issue as to any material fact and that [they are] entitled to judgment as a matter of law." Ct. Ch. R. 56(c).

Although it is easy to be skeptical, the inference can be reasonably drawn that Yule was involved in developing and implementing the strategy to drive Matthew out of Aeosphere. For example, scheduling conflicts were created to keep Matthew from attending potentially important meetings.[2] Meetings, joined by Yule, between Laudamiel and Capua, were held without Matthew allegedly to discuss how to exclude Matthew from Aeosphere.[3] Yule committed not to share details of the meetings with Matthew.[4] Yule told Capua and Laudamiel that "[a]ny contact I have with [Matthew] during this time will purely be on the basis that it may help you guys."[5] Yule offered to threaten—with a potentially desired effect on Matthew—that Fläkt Woods was about to end its relationship with Aeosphere.[6] After Aeosphere was dissolved, Yule took the position that DreamAir (Laudamiel's new entity) "will simply inherit the terms of the agreement

---

[2] Yule referred to one such effort as "a slightly devious mechanism." App. of Dep. Trs. Cited in Pl.'s Answering Br. in Opp'n to Def. Fläkt Woods Gp. SA's Mot. for Summ. J. ("Dep. Trs.") Ex. 3 ("Yule Dep II"), at 371.

[3] *See, e.g.*, *id.* at 383-85.

[4] *See, e.g.*, Decl. of Thad J. Bracegirdle in Supp. of Pl.'s Answering Br. in Opp'n to Def. Fläkt Woods Gp. SA's Mot. for Summ. J. ("Pl.'s Answering Br.") Ex. 4, at LCA 24939; Yule Dep. II 416-19.

[5] Pl.'s Answering Br. Ex. 7, at FWGSA008960.

[6] *See, id.*, Ex. 15.

previously in place with Aeosphere."[7]  This recital does not include all examples of Yule's conduct that Matthew cites.  It does develop a sense, however, for how Yule went about seeking his objectives.  These occasions and others like them perhaps can be explained away.  Sequencing may affect the emphasis which they should be given.  These considerations, especially when assessed against the balance of the record, do not make Yule's involvement necessarily improper and do not make the corresponding inferences in Matthew's favor the only ones or even the more reasonable ones, but they are considerable obstacles to granting Fläkt Woods' motion for summary judgment generally.

Because Matthew sponsors several theories for imposing liability upon Fläkt Woods and the various theories have some distinct aspects, a brief review of the claims, in light of the more general preceding observations, is necessary.

Fläkt Woods argues that no claims tied to breach of fiduciary duty should continue because such claims are also based on contract and therefore are duplicative and without independent basis.  The question is whether Matthew has identified any harm that is not the consequence of the dissolution or the unwinding

---

[7] *Id.* Ex. 29, at FWGSA010617.

of Aeosphere which are the grounds for his contract claims.[8]  If his facts are accurate, there were breaches of fiduciary duty.  However, fiduciary duty breaches do not proceed in parallel with contract claims,[9] unless there is some harm to be remedied through the lens of fiduciary duty which cannot be adequately compensated through enforcement of the contract.  "To allow a fiduciary duty claim to coexist in parallel with a[] . . . contractual claim, would undermine the primacy of contract law over fiduciary law in matters involving . . . contractual rights and obligations . . . ."[10]  Thus, assessing the aiding and abetting of a breach of fiduciary duty claim against Fläkt Woods first requires consideration of whether the claim against Laudamiel would be foreclosed by the parallel contract claims.[11]

---

[8] *Cf. PT China LLC v. PT Korea LLC*, 2010 WL 761145 (Del. Ch. Feb. 26, 2010) (alleging fiduciary duty breaches that were not adequately addressed by specific provisions of the contract).

[9] *See Nemic v. Schrader*, 991 A.2d 1120, 1129 (Del. 2010) ("It is a well-settled principle that where a dispute arises from obligations that are expressly addressed by contract, that dispute will be treated as a breach of contract claim.  In that specific context, any fiduciary duty claims arising out of the same facts that underlie the contract obligations would be foreclosed as superfluous.").

[10] *Gale v. Bershad*, 1998 WL 118022, at *5 (Del. Ch. Mar. 4, 1998).

[11] Matthew's rights against Fläkt Woods do not depend upon Laudamiel's litigation strategy.  Laudamiel has not sought the dismissal of the fiduciary duty claims against him on these grounds.

Matthew asserts both aiding and abetting breach of fiduciary duty claims and tortious interference with contractual relations claims against Fläkt Woods. As a general matter, establishing an aiding and abetting claim would likely be less difficult than demonstrating tortious interference with contractual relations.[12] Avoiding duplication of companion fiduciary duty and contact claims serves to conserve resources. The purpose is not to make a plaintiff's tasks even more challenging. Nevertheless, Matthew's claim against Fläkt Woods "for aiding and abetting [Laudamiel's] breaches of fiduciary duty must also be dismissed [if] there is no legally sufficient underlying claim for breach of fiduciary duty against [Laudamiel]."[13] Thus, Matthew's claim that Fläkt Woods aided and abetted breaches of fiduciary duties owed to him would be dismissed if the underlying breach of fiduciary duty did not cause harm separate from that caused by the breach of contract.

---

[12] Matthew properly does not argue that Fläkt Woods aided and abetted a breach of contract.

[13] *Madison Realty P'rs 7, LLC v. AG ISA, LLC*, 2001 WL 406268, at *6 n.19 (Del. Ch. Apr. 17, 2001) (citing *Moore Bus. Forms, Inc. v. Cordant Hldgs. Corp.*, 1995 WL 662685, at *6 (Del. Ch. Nov. 2, 1995)).

The harm suffered by Laudamiel arose primarily from the dissolution and winding up of Aeosphere, and Aeosphere's operating agreement expressly addressed those topics. However, Matthew has presented facts in support of broader allegations. For example, Matthew contends that Fläkt Woods is carrying on Aeosphere's business with DreamAir. While dissolving and winding up Aeosphere may have been the primary means by which the alleged wrongdoing occurred, the breadth of the allegations and the post-dissolution relationship between Fläkt Woods and DreamAir raise material issues of fact about the scope of the violations and the resulting harm.[14] Thus, whether there was harm caused by a breach of fiduciary duties that may be distinguished from the harm resulting from the breach of contract is a question of fact that cannot be resolved on this summary judgment record.

Similarly, Fläkt Woods' efforts to obtain summary judgment on Matthew's civil conspiracy claim fail largely for the same reason as its unavailing efforts to secure dismissal of the aiding and abetting of fiduciary duty claims.

---

[14] *See Matthew v. Fläkt Woods Gp. SA*, 56 A.3d 1023, 1029 (Del. 2012) ("[These allegations] identify specific assets that Laudamiel and Capua allegedly misappropriated as part of a scheme to exploit those assets with Fläkt Woods. The dissolution of Aeosphere was not the end point of the conspiracy; it was one of the means by which the conspiracy was effectuated.").

Matthew brings tortious interference with contractual relations claims against Fläkt Woods based on two contracts: Aeosphere's limited liability company agreement and Matthew's employment agreement with Aeosphere.[15] Although Fläkt Woods knew of Aeosphere's limited liability company agreement, there is a question as to whether it knew of Matthew's employment agreement. It may be that Yule never saw an employment agreement, but he is charged with knowledge that Matthew served as an employee or officer of Aeosphere and therefore there was a contractual relationship. It is possible that Yule (and, thus, Fläkt Woods) believed that Matthew was simply a co-owner and all of the economic benefits arose from that relationship. Yule, however, acknowledged that he had had conversations with Matthew about his "employment in the organization."[16] Again, this is not especially persuasive evidence of knowledge of the employment contract, but it supports the notion that Yule would have inferred

---

[15] Matthew, in order to be successful with his tortious interference with contractual relations claims, must demonstrate that there was a contract about which Fläkt Woods knew, that an intentional act was a significant factor in causing a breach of the contract, that the act was without justification and that it caused injury. *See, e.g.*, *WaveDivision Hldgs. LLC v. Highland Capital Mgmt. L.P.*, 49 A.3d 1168, 1174 (Del. 2012).

[16] Dep. Trs. Ex. 2 (Yule Dep. I), at 207.

from the facts and circumstances of Matthew's relationship with Aeosphere that there was an employment contract.[17]  Thus, Fläkt Woods cannot prevail on its argument that it was not aware of the employment agreement.

Fläkt Woods also argues that it was not a substantial factor in causing the breach of either of the contracts.  Although Yule may not have directed Capua and Laudamiel to pursue the dissolution of Aeosphere, the record supports an inference that Yule wanted to go forward without Matthew and that he encouraged Laudamiel and Capua to figure out how to achieve that objective and to implement the strategy.  It may be that Yule had very little, if anything, to do with the decision by Laudamiel and Capua to force Matthew out, but Yule's actions may be inferred to have been a substantial cause in the process that resulted in the dissolution.

---

[17] Fläkt Woods points out that most of Yule's actions were either while Matthew and Laudamiel were trying to work out their disagreements or after the dissolution, thus leaving only a very few actions upon which to premise tortious interference. Matthew's proof for summary judgment purposes cannot be so strictly limited. There was a process, one in which Yule participated, that resulted in Aeosphere's dissolution.  Preliminary actions may be part of conduct that turns out to be tortious interference even though no breach was directly caused at that very moment.

Fläkt Woods also argues that its conduct was legally justified.[18]   Fläkt Woods is correct that this consideration is of critical importance in Matthew's tortious interference claim.   From Fläkt Woods' perspective, Aeosphere, because of the internal dissention, was not likely to be an effective joint venturer. Preservation of a business relationship with Aeosphere in which Matthew played a role was difficult to envision.   Yet, this case is not at the stage where the Court may make factual findings or overlook reasonable inferences in Matthew's favor. How far Yule inserted himself into the tempestuous relationship among Laudamiel, Matthew, and, to a lesser extent, Capua is a topic that cannot be resolved on the paper record before the Court.   Fact finding and an assessment of the credibility and perceptions of the various witnesses cannot be avoided.

In sum, Matthew's tortious interference with contractual relations claim presents triable issues, and, accordingly, Fläkt Woods' motion for summary judgment as to this claim must be denied.

---

[18] *See* Restatement (Second) of Torts § 767 (1979).

Finally, Fläkt Woods seeks summary judgment on Matthew's unjust enrichment claim. Matthew has not demonstrated a basis for concluding that Fläkt Woods has been enriched. Enrichment is a necessary predicate for unjust enrichment.[19] This is not merely a matter of accounting within various Fläkt Woods entities; Fläkt Woods did not gain any economic advantage from its conduct. This case is about whether Matthew has been damaged and, in this context, whether Fläkt Woods was responsible for that damage. Matthew has not set forth a basis for invoking the unjust enrichment doctrine. He may be able to show that he suffered an "impoverishment," but it does not inevitably follow that there was an enrichment for Fläkt Woods or that he lacks an adequate remedy at law for any harm that he suffered. In sum, Fläkt Woods has demonstrated, through the undisputed facts, that it is entitled to summary judgment on Matthew's unjust enrichment claim.

---

[19] *See, e.g.*, *Pharmathene, Inc. v. Siga Techs., Inc.*, 2011 WL 4390726, at *27 (Del. Ch. Sept. 22, 2011).

Accordingly, Fläkt Woods' motion for summary judgment is granted as to

Count VI, but denied as to Counts III, IV, and VII.

**IT IS SO ORDERED.**

> Very truly yours,
>
> */s/ John W. Noble*

JWN/cap
cc:   Stephanie S. Habelow, Esquire
      Mr. Christophe Laudamiel
      DreamAir LLC
      Register in Chancery-K