# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| In the Matter of: | ) |
| | ) |
| Dissolution of ARCTIC EASE, LLC, a | ) |
| Delaware limited liability company, | ) C.A. No. 8932-VCMR |
| and SUMMETRIA, LLC, a Delaware | ) |
| limited liability company. | ) |

# MEMORANDUM OPINION

Date Submitted: September 30, 2016
Date Decided: December 9, 2016

Ryan M. Ernst and Daniel P. Murray, O'KELLY ERNST & BIELLI, LLC, Wilmington, Delaware; *Attorneys for Third-Party Plaintiffs Carol Forden, Forden Holdings, Inc., WCFOTM, Inc., BC Parent, LLC, and Arctic Advisors, LLC.*

Marc S. Casarino and Agatha C. Mingos, WHITE AND WILLIAMS LLP, Wilmington, Delaware; *Attorneys for Third-Party Plaintiffs Bruce Heck, Eileen Nigro, Eileen Slawek, and Joseph Slawek.*

Michael F. Bonkowski, COLE SCHOTZ P.C., Wilmington, Delaware; *Attorney for Third-Party Defendants William Cohen, Costar Partners, LLC, Gawi, LLC, and Mitchel Weinberger.*

**MONTGOMERY-REEVES, Vice Chancellor.**

In this dissolution action, certain limited liability company members have filed third-party complaints against another limited liability company member and some of its owners and affiliates alleging breach of fiduciary duty, misrepresentation, fraud, and related claims. The third-party defendants have moved to dismiss for lack of personal jurisdiction and for failure to state a claim upon which relief can be granted. In this memorandum opinion, I hold that this Court lacks personal jurisdiction over the third-party defendants and grant their motions to dismiss.

## I.  FACTUAL BACKGROUND

The facts of this case derive from the third-party complaints, the documents they incorporate by reference, and additional evidence submitted by both parties.[1]

Summetria, LLC, a Delaware limited liability company, ("Summetria") was organized on May 5, 2008. Summetria owns 100 percent of Arctic Ease, LLC, a Delaware limited liability company, ("Arctic Ease"), which is in the business of developing and marketing reusable cryotheraphy wraps. Forden Holdings, Inc., WCFOTM, Inc, BC Parent, LLC, and Arctic Advisors, LLC (collectively, the

---

[1]  On a motion to dismiss, "the [c]omplaint's allegations are assumed to be true, and the plaintiff receives the benefit of all reasonable inferences." *Virtus Capital L.P. v. Eastman Chem. Co.*, 2015 WL 580553, at *1 (Del. Ch. Feb. 11, 2015). To evaluate whether the Court can exercise personal jurisdiction over the defendants, "the court may go beyond the pleadings and look to affidavits and other discovery of record." *Id.* (quoting *Chandler v. Ciccoricco*, 2003 WL 21040185, at *8 (Del. Ch. May 5, 2003)).

1

"Forden Entities") together own 60 percent of the equity of Summetria. Bruce Heck, Eileen Nigro, Eileen Slawek, and Joseph Slawek (collectively, the "Heck Parties") together own 20 percent of Summetria's equity. Costar Partners, LLC, a New Jersey limited liability company, ("Costar") owns the remaining 20 percent of Summetria's equity. William Cohen and Mitchel Weinberger are the members of Costar. Under the Amended and Restated Limited Liability Company Operating Agreement of Summetria, LLC, (the "Summetria LLC Agreement") Carol Forden is listed as the Managing Member of Summetria.[2]

In mid-2012, Arctic Ease and Summetria were in need of additional capital, and on June 18, 2012, Cohen provided a $1 million loan to Summetria (the "Cohen Note"). The Arctic Ease business continued to flounder, however, and Cohen extended the term of the loan on November 20, 2012. On March 25, 2013, Cohen agreed to a further extension and to provide an additional $250,000 of principal to Summetria. In early 2013, Arctic Ease remained in need of capital, and Cohen allegedly negotiated bridge financing for the business through CSG Re Partners, LLC, an investment-banking firm that Cohen previously had used for personal business ("CSG"). Arctic Ease retained CSG for its own account on February 19, 2013.

---

[2] Summetria LLC Agreement ¶¶ 8.1, 8.6(a).

Throughout this time, Cohen was a member of the board of directors of Summetria[3] and allegedly participated in the business of Arctic Ease by leveraging his contacts with distributers and investment bankers for Arctic Ease. For example, Cohen facilitated negotiations of a reseller and distribution contract for Arctic Ease wraps in South and Central America. He also attended meetings with medical equipment distributers and marketed Arctic Ease wraps to healthcare professionals. The Heck Parties allege that Cohen served an investor relations role and provided them with information about the current state of the business. In early 2013, Cohen also requested that Weinberger and a CSG employee be added to the Summetria board of directors. The record contains no evidence or allegation that those individuals were added to the board.

On April 29, 2013, Cohen told Forden[4] that CSG would require Cohen to guarantee any bridge financing that it could arrange, which presumably was not an acceptable term to Cohen. Forden, however, never saw a term sheet for the financing. On or about May 5, 2013, Cohen told Forden that he would not agree to the bridge financing because its terms would conflict with his position as the sole Class A member of Summetria.

---

[3]     As discussed below, the Summetria board of directors was an advisory board.

[4]     References to "Forden" in this opinion refer to Carol Forden not any of the entities with which she is affiliated.

On May 8, 2013, Cohen resigned from the Summetria board of directors, and on June 20, 2013, he notified Summetria of its default on the Cohen Note. In or around July 2013, Summetria and Arctic Ease defaulted on loans they owed to Univest Bank ("Univest") and LSQ Funding Group L.C. ("LSQ") that were secured by all of the assets of Arctic Ease and all of the assets of Summetria except its interest in Arctic Ease. AE2, Inc. ("AE2") acquired Univest and LSQ's rights under their credit and security agreements with Arctic Ease, and AE2 then foreclosed on Summetria and Arctic Ease's assets and sold them at a foreclosure sale on July 29, 2013. Cohen caused Gawi, LLC, a New Jersey limited liability company that Cohen controls, ("Gawi," collectively with Cohen, Weinberger, and Costar, the "Cohen Parties") to purchase the Summetria and Arctic Ease assets at the foreclosure sale, which the third-party plaintiffs allege was Cohen's plan all along.

## II.  THIS LITIGATION

On September 20, 2013, the Forden Entities filed a petition in this Court seeking dissolution of Arctic Ease and Summetria. Thereafter, Forden, the Forden Entities, and the Heck Parties asserted third-party claims against the Cohen Parties for breach of fiduciary duty, fraud, misrepresentation, and other related claims arising out of these facts.[5] The Cohen Parties move to dismiss the third-party

---

[5]  Cohen sued Forden in the Superior Court of New Jersey, Chancery Division for breach of a promissory note and fraud arising out of the facts of this dispute. Forden filed a counterclaim against Cohen and parties related to Cohen for essentially the

4

complaints under Rule 12(b)(2) for lack of personal jurisdiction and under Rule 12(b)(6) for failure to state a claim. The Heck Parties and the Forden Entities oppose the motions to dismiss, alleging that this Court has personal jurisdiction over Cohen under the Delaware long-arm statute and the Delaware limited liability company act (the "LLC Act") and over all the Cohen Parties through the conspiracy theory of jurisdiction. The Heck Parties also request jurisdictional discovery. Because I grant the motions to dismiss for lack of personal jurisdiction, I do not address any other grounds for dismissal.

## III. ANALYSIS

Under Delaware law, there are "two bedrock requirements for personal jurisdiction: (1) a statutory basis for service of process; and (2) the requisite 'minimum contacts' with the forum to satisfy constitutional due process."[6] On a Rule 12(b)(2) motion to dismiss, "the plaintiff bears the burden of showing a *prima facie* basis for the Court's exercise of personal jurisdiction over a nonresident defendant . . . ."[7] "[W]hen no evidentiary hearing has been held, the plaintiffs'

---

same claims she asserted in this Court. That litigation proceeded through a full trial, and a jury entered a verdict in Cohen's favor. As a result, Forden voluntarily dismissed her third-party complaint against the Cohen Parties. Oral Arg. Tr. 3.

[6]     *Fisk Ventures, LLC v. Segal*, 2008 WL 1961156, at *6 (Del. Ch. May 7, 2008).

[7]     *Ross Hldg. & Mgmt. Co. v. Advance Realty Gp., LLC*, 2010 WL 1838608, at *11 (Del. Ch. Apr. 28, 2010).

5

burden is a relatively light one."[8] "'[T]he record is construed in the light most favorable to the plaintiff,' and the plaintiff need not rely solely on the allegations in the complaint but may employ extra-pleading material as a supplement to establish jurisdiction."[9] But, "[c]ourt[s] should exercise caution in extending jurisdiction over nonresident defendants whose direct ties to Delaware are, at best, tenuous."[10]

The relevant sections of the Delaware long-arm statute[11] grant specific personal jurisdiction "over any nonresident, or a personal representative, who in person or through an agent: [t]ransacts any business or performs any character of work or service in the State" or "[c]auses tortious injury in the State by an act or omission in this State . . . ."[12] The Court of Chancery has held that the statute grants personal jurisdiction to "the maximum extent possible under the due process clause."[13] In order to exercise personal jurisdiction over a party under the due

---

[8]  *Cornerstone Techs., LLC v. Conrad*, 2003 WL 1787959, at *3 (Del. Ch. Mar. 31, 2003).

[9]  *Ross Hldg.*, 2010 WL 1838608, at *11 (quoting *Cornerstone Techs.*, 2003 WL 1787959, at *3).

[10]  *Id.* at *15.

[11]  The Forden Entities do not identify which section of the Delaware long-arm statute provides jurisdiction in this case, and the Heck Parties make no arguments regarding the Delaware long-arm statute.

[12]  10 *Del. C.* § 3104(c)(1), (3).

[13]  *Haisfield v. Cruver*, 1994 WL 497868, at *3 (Del. Ch. Aug. 25, 1994).

process clause without the party's consent, "minimum contacts" are required with the state of Delaware.[14] A party's ownership of interests in a Delaware entity alone does not constitute sufficient minimum contacts for Delaware courts to exercise personal jurisdiction.[15]

The LLC Act contains an implied consent provision in 6 *Del. C.* § 18-109 that allows Delaware courts to exercise personal jurisdiction over parties who manage Delaware limited liability companies in actions "involving or relating to the business" of the company.[16] Section 18-109(a) describes two types of "manager[s]" for personal jurisdiction purposes: (1) managers as defined in the operative limited liability company agreement[17] and (2) parties who "participate[] materially in the management" of a Delaware limited liability company.[18] The U.S. District Court for the District of Delaware has held that alleged managers in charge of financial and commercial functions for a limited liability company who act subject to the

---

[14]    *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

[15]    *Fisk Ventures, LLC v. Segal*, 2008 WL 1961156, at *7 (Del. Ch. May 7, 2008).

[16]    6 *Del. C.* § 18-109(a).

[17]    *See id.* § 18-101(10), *cited in id.* § 18-109(a)(i).

[18]    *Id.* § 18-109(a)(ii).

7

board's authority do not "participate[] materially in the management" absent a "control or decision-making role" in the company.[19]

The Delaware Supreme Court has adopted the conspiracy theory of personal jurisdiction and has held as follows:

> [A] conspirator who is absent from the forum state is subject to the jurisdiction of the court, assuming he is properly served under state law, if the plaintiff can make a factual showing that: (1) a conspiracy to defraud existed; (2) the defendant was a member of that conspiracy; (3) a substantial act or substantial effect in furtherance of the conspiracy occurred in the forum state; (4) the defendant knew or had reason to know of the act in the forum state or that acts outside the forum state would have an effect in the forum state; and (5) the act in, or effect on, the forum state was a direct and foreseeable result of the conduct in furtherance of the conspiracy.[20]

"[T]he conspiracy theory itself is not an independent basis for jurisdiction that alleviates the need to establish a statutory hook in Section 3104."[21] The theory, rather, "is based on the legal principle that one conspirator's acts are attributable to the other conspirators."[22]

---

[19]     *Wakely Ltd. v. Ensotran, LLC*, 2014 WL 1116968, at *5 (D. Del. Mar. 18, 2014).

[20]     *Istituto Bancario Italiano SpA v. Hunter Eng'g Co.*, 449 A.2d 210, 225 (Del. 1982).

[21]     *Virtus Capital L.P. v. Eastman Chem. Co.*, 2015 WL 580553, at *12 (Del. Ch. Feb. 11, 2015).

[22]     *Id.* (quoting *Matthew v. Flakt Woods Gp. SA*, 56 A.3d 1023, 1027 (Del. 2012)) (internal quotation marks omitted).

8

## A.  William Cohen

The Forden Entities and the Heck Parties argue that Cohen is a manager of Summetria under Section 18-109(a)(i) because he is an original member of the Summetria board of directors, and as such, he possesses voting power.[23]  This argument fails.  Cohen is not a manager of Summetria under Section 18-109(a)(i) because the Summetria LLC Agreement makes clear that Forden is the sole manager of Summetria.  The Summetria LLC Agreement states that Forden has the authority to "manage, act for, or bind the Company."[24]  Further, the Summetria LLC Agreement provides that the other members "shall not take part in, or interfere in any manner with, the management, conduct or control of the business and affairs of the Company, and shall not have any right or authority to manage, act for or bind the Company unless so authorized by the Managing Member."[25]  Section 8.10 of the Summetria LLC Agreement, which establishes the board of directors, does not grant the board any management authority other than the authority to set board members' compensation.[26]  Thus, even assuming Cohen is an original member of the board of directors with voting power, he still is not a manager under Section 18-109(a)(i)

---

[23]    Forden Entities' Compl. ¶ 12; Heck Parties' Compl. ¶ 63.

[24]    Summetria LLC Agreement ¶¶ 8.1, 8.6(a).

[25]    *Id.* ¶ 8.1.

[26]    *Id.* ¶ 8.10.

because the Summetria board as a whole cannot manage the business and affairs of Summetria under the Summetria LLC Agreement. Rather, only Forden can.[27]

The third-party plaintiffs also argue that Cohen materially participated in the management of Summetria under Section 18-109(a)(ii). They allege and provide evidence[28] that Cohen negotiated a distribution agreement for Arctic Ease,[29] conveyed information to Summetria members about Summetria's finances,[30] arranged for Arctic Ease bridge financing (albeit unsuccessfully) through his personal investment bankers at CSG,[31] and discussed Arctic Ease products with potential medical distributers in Indonesia, Japan, and Korea.[32] These allegations fail to show the "control or decision-making role"[33] required for material participation in the management of Summetria under Section 18-109(a)(ii).

---

[27] *Id.* ¶ 8.1.

[28] The Cohen Parties challenge the admissibility of the emails attached to the Heck Parties' Answering Brief (Cohen Parties' Heck Reply Br. 8-11), but because I hold that this Court lacks personal jurisdiction over the Cohen Parties, I need not reach that issue.

[29] Heck Parties' Answering Br. Ex. A; Forden Entities' Compl. ¶ 35.

[30] Heck Parties' Compl. ¶ 54.

[31] Heck Parties' Answering Br. Ex. C; Forden Entities' Compl. ¶ 37.

[32] Heck Parties' Answering Br. Ex. E; Forden Entities' Compl. ¶ 39.

[33] *Wakely Ltd. v. Ensotran, LLC*, 2014 WL 1116968, at *5 (D. Del. Mar. 18, 2014).

10

The facts of *Wakley Ltd. v. Ensotran LLC*, a federal case in the District of Delaware, are especially close to the facts in this case.  In an opinion that thoroughly examined Delaware Court of Chancery personal jurisdiction cases, the federal court refused to exercise personal jurisdiction over two parties who performed high-level services for a Delaware limited liability company.  Roger Baar, the Vice President of Business Development in that case, negotiated major agreements for Ensotran, LLC's largest project.  The plaintiff alleged that Roger[34] eventually took over the day-to-day management of the company.  Donna Baar, the Financial Controller in that case, prepared the company's financial statements and was the sole signatory on the company bank account.[35]  But because Roger and Donna reported to the board of directors and acted subject to the authority of the board, the court held that their actions "fail[ed] to demonstrate the necessary control or decision-making role" to satisfy the required material participation in the management of the company under Section 18-109(a)(ii).[36]

---

[34]    I use first names here for clarity without intending disrespect or familiarity.

[35]    *Wakely*, 2014 WL 1116968, at *2-3.

[36]    *Id.* at *5-6.

11

The *Wakely* court reviewed this Court's opinions in *Vichi v. Koninklijike Philips Electronics N.V.*[37] and *Phillips v. Hove*[38] in detail. The federal court analogized *Wakely* to *Vichi*. In *Vichi*, the Court of Chancery did not exercise personal jurisdiction because although defendant Ho executed notes for the entity referred to as "Finance" and was involved in forming Finance, he was an employee of Finance's sole member and manager, International, and took the challenged actions as an International representative. Ho thus did not participate materially in the management of Finance.[39] By analogy, Roger and Donna did not participate materially in management because they were working primarily "at the direction of Wakely and its principal, Elmer Yuen," a member of the Ensotran, LLC, board.[40]

Similarly, the *Wakely* court distinguished *Hove*. In *Hove*, the Court of Chancery exercised personal jurisdiction in part because "the defendant's *own testimony* established that he 'took over . . . in all respects' the day-to-day operations of the LLC and 'effectively ran the business . . . .'"[41] Hove "signed bankruptcy petitions on behalf of the LLC, opened up a bank account for the LLC, and then

---

[37]  2009 WL 4345724 (Del. Ch. Dec. 1, 2009).

[38]  2011 WL 4404034 (Del. Ch. Sept. 22, 2011).

[39]  *Wakely*, 2014 WL 1116968, at *4 (citing *Vichi*, 2009 WL 4345724, at *7).

[40]  *Id.* at *5 (quoting third-party defendants' argument in *Wakely*).

[41]  *Id.* (quoting *Hove*, 2011 WL 4404034, at *22).

12

chose to dismiss the bankruptcy proceedings."[42]  The *Wakely* court distinguished

*Hove* and held that an email from Roger indicating that "[he] will be [the] primary

contact for the CNSE project(s)" did "not equate to Roger taking control of

Ensotran's day-to-day operations."[43]  The *Wakely* opinion then analyzed several

additional relevant Delaware personal jurisdiction cases and held that "[e]ven

accepting all well-pleaded allegations as true, these acts fail to demonstrate the

*necessary control or decision-making role* that has been found to satisfy the statutory

standard for personal jurisdiction."[44]

Cohen's alleged conduct mirrors the facts of *Wakely*.  Cohen purportedly

negotiated a distribution agreement for South and Central America on behalf of

Arctic Ease.  In *Wakely*, Roger had the "sole responsibility to negotiate any sale, or

---

[42]     *Id.* (citing *Hove*, 2011 WL 4404034, at \*12-14).

[43]     *Id.*

[44]     *Id.* at \*5 & n.7 (emphasis added) (citing *Feeley v. NHAOCG, LLC*, 2012 WL
        966944, at \*7 (Del. Ch. Mar. 20, 2012) (finding material participation in the
        management of an LLC where a member took actions within the exclusive authority
        of the Managing Member under the LLC agreement and told clients of the LLC that
        it was acting as the Managing Member); *Fisk Ventures, LLC v. Segal*, 2008 WL
        1961156, at \*7 (Del. Ch. May 7, 2008) (drawing a distinction between material
        participation in the management and merely conferring with one's appointed
        representatives to the board of directors and finding that involvement in only one
        issue before the board did not constitute material participation in the LLC's
        management); *Cornerstone Techs., LLC v. Conrad*, 2003 WL 1787959, at \*11 &
        n.37 (Del. Ch. Mar. 31, 2003) (finding that a party was a manager under Section 18-
        109(a) where he maintained a large equity stake in the LLC, founded the LLC, and
        held himself out as the CEO of the LLC when the LLC agreement stated that the
        CEO was a manager)).

13

licensing of any of the assets of Ensotran LLC, or the sale of Ensotran LLC or its involvement in any joint ventures, subject to the decisions and instructions of the board."[45]  Cohen allegedly arranged for Arctic Ease bridge financing.  In *Wakely*, Donna had "complete oversight and management of the finances of Ensotran LLC, subject to the decisions and instructions of the board."[46]  The court did not exercise personal jurisdiction over either Roger or Donna because their power was explicitly subject to the power of the board of directors, and they lacked the requisite control or decision-making role.[47]  Similarly, to the extent Cohen had any power, it was subject to Forden's decision-making authority under the Summetria LLC Agreement.

As additional evidence that Cohen materially participated in the Summetria management, the Heck Parties asserted at oral argument and in their briefs that Cohen usurped power from Forden and used it to fire Heck.[48]  Their complaint actually alleges, however, that "Forden and Cohen removed [Heck]," and later the complaint refers to "Forden's termination of Heck."[49]  Even taking all reasonable

---

[45]     *Id.* at *2.

[46]     *Id.*

[47]     *Id.* at *5-6.

[48]     Heck Parties' Answering Br. 5; Oral Arg. Tr. 21.

[49]     Heck Parties' Compl. ¶¶ 35, 49.

inferences in the Heck Parties' favor, these allegations are not sufficient to suggest that Cohen materially participated in management when Forden alone had the authority to manage Summetria. Any management power Cohen may have exercised was subject to Forden's control as the Managing Member.[50]

The third-party plaintiffs also allege that Cohen insisted that Weinberger and a CSG employee be added to the Summetria board of directors. Notably, however, the third-party complaints do not allege that Weinberger or anyone associated with CSG was ever added to the board.[51] These facts do not indicate that Cohen usurped management power from Forden.[52]

---

[50]    The Heck Parties' request for jurisdictional discovery is denied. Discovery is not appropriate so plaintiffs "can fish for a possible basis for this court's jurisdiction. Before ordering personal jurisdiction discovery there must be at least 'some indication that this particular defendant is amenable to suit in this forum.'" *In re Am. Int'l Gp., Inc.*, 965 A.2d 763, 831 n.195 (Del. Ch. 2009) (quoting *Hansen v. Neumueller GmbH*, 163 F.R.D. 471, 475 (D. Del. 1995)). "Without a non-frivolous ground for personal jurisdiction, jurisdictional discovery is not appropriate." *Id.* Additionally, the Heck Parties should have information about the extent of Cohen's management without the help of discovery. Heck was originally in charge of the Arctic Ease manufacturing and packaging process (Heck Parties' Compl. ¶ 19) and has access to his own files. Further, the Heck Parties referenced in their complaint and attached to their briefs several private emails among Cohen, Forden, and other parties that were obtained in the New Jersey litigation, which included full discovery and proceeded through trial.

[51]    *See also* Oral Arg. Tr. 8.

[52]    Because Cohen was not a "manager" under Section 18-109(a), I need not address the Forden Entities' argument that Cohen's actions "involv[ed] or relat[ed] to the business." *See* 6 *Del. C.* § 18-109(a).

15

The Forden Entities further argue that this Court can exercise personal jurisdiction over Cohen under Delaware's long-arm statute.[53] The Forden Entities' complaint, however, does not allege facts regarding any act Cohen committed in Delaware or any business Cohen transacted in Delaware, either personally or through his agents.[54] The only alleged connection Cohen has with Delaware is his indirect ownership of a Delaware limited liability company interest. The Court, therefore, cannot exercise jurisdiction over Cohen under the long-arm statute.

## B.      Mitchel Weinberger, Costar Partners, LLC, and Gawi, LLC

The third-party complaints do not allege facts regarding any contact Weinberger, Costar, and Gawi have had with Delaware or that any of them has consented to personal jurisdiction in Delaware. The complaint also does not allege that Weinberger manages a Delaware entity.[55] At the hearing, the Forden Entities argued that the Court should exercise personal jurisdiction over Weinberger under the conspiracy theory of personal jurisdiction.[56] The Heck Parties indicated that the

---

[53]     Forden Entities' Answering Br. 10-11.

[54]     *Cf.* Cohen Aff. ¶¶ 3-7.

[55]     *Cf.* Weinberger Aff. ¶¶ 3-8.

[56]     Oral Arg. Tr. 36.

basis for personal jurisdiction over Costar and Gawi also is the conspiracy theory of jurisdiction.[57]

Personal jurisdiction by conspiracy is not an independent basis for jurisdiction. Rather it relies on the agency relationship inherent in a conspiracy and a proper jurisdictional hook for at least one conspirator.[58] Because neither Cohen nor any other member of the alleged conspiracy is subject to personal jurisdiction in this Court,[59] the third-party complaints do not adequately allege that Weinberger, Costar, or Gawi are subject to personal jurisdiction through the conspiracy theory.

## III. CONCLUSION

For the foregoing reasons, the third-party defendants' motions to dismiss the Forden Entities' third-party complaint and the Heck Parties' third-party complaint are GRANTED for lack of personal jurisdiction.

**IT IS SO ORDERED.**

---

[57] *Id.* at 27.

[58] *Virtus Capital L.P. v. Eastman Chem. Co.*, 2015 WL 580553, at *12 (Del. Ch. Feb. 11, 2015).

[59] The third-party complaints do not make clear which parties are allegedly members of a conspiracy, but I assume the third-party plaintiffs mean to include all of the third-party defendants in the alleged conspiracy.