# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DANIEL J. RISKIN, M.D., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 2019-0570-KSJM |
| | ) | |
| BRENTON BURNS; MARY BETH JENKINS; RAYMOND SCOTT; JOHN STEPHEN WHITEHURST; SCOTT HUEBNER; JOHN KUZMISHIN; FRED SCHWARZER; CRAIG GOMULKA; CHARLES TALBOT HEPPENSTALL, JR.; UNIVERSITY OF PITTSBURGH MEDICAL CENTER, a Pennsylvania corporation; UPMC PRESBYTERIAN SHADYSIDE, a Pennsylvania corporation; UPMC HEALTH PLAN, INC., a Pennsylvania corporation; CHARTER LIFE SCIENCES (OHIO) II, L.P., a Delaware limited partnership; CHARTER LIFE SCIENCES II, L.P., a Delaware limited partnership; CLS PARTNERS II (OHIO), LLC, a Delaware limited liability company; CLS PARTNERS II, L.P., a Delaware limited partnership; CLS MANAGEMENT II, LLC, a Delaware limited liability company, and HEALTH FIDELITY, INC., a Delaware corporation. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**ORDER RESOLVING HEPPENSTALL'S AND THE UPMC AFFILIATES' MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

1. This Order resolves the motions to dismiss the Amended Complaint[1] for lack of personal jurisdiction under Court of Chancery Rule 12(b)(2) filed by Defendants Charles Talbot Heppenstall, Jr., UPMC Presbyterian Shadyside ("UPMC Presbyterian"), and UPMC Health Plan, Inc. ("UPMC Health Plan," and with UPMC Presbyterian, the "UPMC Affiliates"). The factual background in the contemporaneously filed Memorandum Opinion supplies the background to the present motion. Defined terms used in this Order have the same meaning ascribed to them in the Memorandum Opinion.

2. "When a defendant moves to dismiss a complaint pursuant to Court of Chancery Rule 12(b)(2), the plaintiff bears the burden of showing a basis for the court's exercise of jurisdiction over the defendant."[2] Delaware courts resolve questions of jurisdiction using a two-step analysis.[3] First, the court must "determine that service of process is authorized by statute."[4] Second, the defendant must have certain minimum contacts with Delaware such that the exercise of personal jurisdiction "does not offend traditional notions of fair play and substantial justice."[5]

---

[1] C.A. No. 2019-0570-KSJM, Docket ("Dkt.") 56, Verified Am. Class Action and Derivative Compl. ("Am. Compl.").

[2] *Ryan v. Gifford*, 935 A.2d 258, 265 (Del. Ch. 2007) (citing *Werner v. Miller Tech. Mgmt., L.P.*, 831 A.2d 318 (Del. Ch. 2003)).

[3] *Id.*

[4] *Id.*

[5] *Matthew v. Fläkt Woods Gp. SA*, 56 A.3d 1023, 1027 (Del. 2012) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted)).

3. To satisfy these tests as to Heppenstall and the UPMC Affiliates, Plaintiff relies on Delaware's long-arm statute, codified at 10 *Del. C.* § 3404, and the conspiracy theory of jurisdiction.

4. The Delaware Supreme Court established the elements of the conspiracy theory of jurisdiction in *Istituto Bancario Italiano SpA v. Hunter Engineering Co.*:

> [A] conspirator who is absent from the forum state is subject to the jurisdiction of the court . . . if the plaintiff can make a factual showing that: (1) a conspiracy . . . existed; (2) the defendant was a member of that conspiracy; (3) a substantial act or substantial effect in furtherance of the conspiracy occurred in the forum state; (4) the defendant knew or had reason to know of the act in the forum state or that acts outside the forum state would have an effect in the forum state; and (5) the act in, or effect on, the forum state was a direct and foreseeable result of the conduct in furtherance of the conspiracy.[6]

"Delaware courts construe this test narrowly and require a plaintiff to assert specific facts, not conclusory allegations, as to each element."[7] So long as the plaintiff asserts specific facts, "the factual record is read in the light most favorable to the plaintiff."[8]

---

[6] *Perry v. Neupert*, 2019 WL 719000, at *22 (Del. Ch. Feb. 15, 2019) (quoting *Istituto Bancario Italiano SpA v. Hunter Eng'g Co.*, 449 A.2d 210, 225 (Del. 1982)).

[7] *Hartsel v. Vanguard Gp., Inc.*, 2011 WL 2421003, at *10 (Del. Ch. June 15, 2011) (citing *Werner*, 831 A.2d at 329–30).

[8] *Mobile Diagnostic Gp. Hldgs., LLC v. Suer*, 972 A.2d 799, 802 (Del. Ch. 2009).

5.       Plaintiff's arguments as to Heppenstall are slim.  Plaintiff claims that Heppenstall aided and abetted in breaches of fiduciary duties, and this forms the basis of the alleged conspiracy supporting Plaintiff's jurisdictional arguments. Plaintiff alleges that Heppenstall was UPMC's President and the "ultimate decision-maker over [UPMC's] investment in Health Fidelity."[9]  He executed, on behalf of UPMC, stockholder consents purporting to authorize:  the June 2016 Bridge Financing; the December 2016 Equity Plan Amendment; and the 2017 Series B Financing.  He also executed the Note and Warrant Purchase Agreement on behalf of UPMC and attended various Health Fidelity Board meetings.

6.       Heppenstall, however, was not giving his own consent or binding himself in any way in connection with these actions, and Plaintiff supplies no authority for the proposition that the court may attribute those actions to Heppenstall personally so as to establish jurisdiction.  Generally, a corporation "cannot be deemed to have conspired with its officers and agents for purposes of establishing jurisdiction under the conspiracy theory" unless the agent "steps out of her role as an officer or agent and acts pursuant to personal motives."[10]  Plaintiff does not argue

---

[9] *See* Am. Compl. ¶ 41.

[10] *Amaysing Techs. Corp. v. Cyberair Comm'ns, Inc.*, 2005 WL 578972, at *7 (Del. Ch. Mar. 3, 2005).

that Heppenstall acted pursuant to personal motives, so Heppenstall cannot be deemed to have conspired with UPMC for the purpose of establishing jurisdiction.

7. Plaintiff's arguments as to the UPMC Affiliates are even weaker. Plaintiff claims that the UPMC Affiliates aided and abetted Defendants' breaches of fiduciary duties, and this forms the basis of Plaintiff's personal jurisdiction arguments as to the UPMC Affiliates. The Amended Complaint is somewhat vague as to the predicate breach for the aiding and abetting claim. In briefing, Plaintiff hones in on the 2014 and 2015 UPMC Agreements, which allegedly allowed the UPMC Affiliates to "extract[] thousands and millions of dollars from Health Fidelity."[11] As discussed in the Memorandum Opinion, however, claims challenging those transactions pre-dating June 2016 are barred by the doctrine of laches, and thus they cannot supply the predicate conspiracy for jurisdictional purposes.

8. The Amended Complaint contains a few other facts specific to the UPMC Affiliates, none of which support this court's exercise of personal jurisdiction. For example, Plaintiff alleges that Jenkins, who served on the Health Fidelity Board, was also the Chief Administrative and Operating Officer of UPMC Health Plan. But Jenkins's presence on the Health Fidelity Board alone does not give rise to the inference that UPMC Health Plan conspired in any breach of

---

[11] Pl.'s Answering Br. at 101.

fiduciary duty undertaken by any Board members during Jenkins' tenure, and Plaintiff's theory is not more developed than that.

9. Plaintiff also alleges that UPMC Presbyterian executed the stockholder consent for the June 2015 Equity Plan Amendment, but claims challenging that amendment are also barred by the doctrine of laches. Further, as Plaintiff acknowledges, UPMC Presbyterian was not a Health Fidelity stockholder. The printing of "UPMC Presbyterian" was more likely than not a typographical error by the UPMC representative that drafted the document and not supportive of a supposed conspiracy involving UPMC Presbyterian.

10. The claims against Heppenstall and the UPMC Affiliates are therefore dismissed pursuant to Court of Chancery Rule 12(b)(2).

IT IS SO ORDERED.

*/s/ Kathaleen St. Jude McCormick*
Vice Chancellor of the Court of Chancery
December 31, 2020