**COURT OF CHANCERY
OF THE
STATE OF DELAWARE**

MORGAN T. ZURN
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

Date Submitted:  December 20, 2018
Date Decided:  January 7, 2019

Michael J. Barrie, Esquire
William M. Alleman, Jr., Esquire
Benesch, Friedlander, Coplan & Aronoff LLP
222 Delaware Avenue, Suite 801
Wilmington, DE  19801

Barry M. Klayman, Esquire
Gregory F. Fischer, Esquire
Cozen O'Connor P.C.
1201 North Market Street, Suite 1001
Wilmington, DE  19801

Philip A. Rovner, Esquire
Jonathan A. Choa, Esquire
Potter Anderson & Corroon LLP
1313 North Market Street, Hercules Plaza
Wilmington, DE  19801

David S. Eagle, Esquire
Sean M. Brennecke, Esquire
Klehr Harrison Harvey Branzburg LLP
919 Market Street, Suite 1000
Wilmington, DE  19801

> RE:  ***BrandRep, LLC, et al. v. Chad Ruskey, et al.,***
>       C.A. No. 2018-0541-MTZ

Dear Counsel:

The defendants in this case have moved to dismiss breach of fiduciary duty,

aiding and abetting, and trade secret misappropriation claims.[1]  One defendant has

also moved to dismiss on personal jurisdiction grounds.  In anticipation of the

---

[1] I granted motions to dismiss as to Counts II (breach of fiduciary duty by BrandRep Holdings, LLC) and Count V (breach of contractual restrictive covenants by BrandRep Holdings) on a December 14, 2018 teleconference.  Docket Item ("D.I") 220.  I dismissed Count V without prejudice and provided BrandRep Holdings leave to amend, which it did on December 20.  D.I. 208.

preliminary injunction hearing scheduled for tomorrow, I have expedited my consideration of these motions. As explained below, the pending motions are denied. To address the motions promptly, I write for the parties and recite only the necessary facts.

## I. The Court Has Personal Jurisdiction Over Mammano.

BrandRep[2] alleges defendant Deirdre Mammano aided and abetted breaches of fiduciary duty (Count III) and misappropriated trade secrets (Count IV). Mammano has moved to dismiss both counts. She argues she is not subject to personal jurisdiction in Delaware. I address Mammano's personal jurisdiction arguments first, as I can only substantively review the pleadings against her if I have jurisdiction to do so.[3]

When a defendant moves to dismiss for lack of personal jurisdiction under Rule 12(b)(2), "the plaintiff bears the burden of showing a basis for the court's exercise of jurisdiction over the defendant."[4] The plaintiff must "make out a *prima facie* case establishing jurisdiction. A *prima facie* case requires the 'production of enough evidence to allow the fact-trier to infer the fact at issue and rule in the party's

---

[2] I use the term BrandRep to mean BrandRep, LLC and BrandRep Inc. I refer to BrandRep Holdings, LLC as BrandRep Holdings.

[3] *See Branson v. Exide Elecs. Corp.*, 625 A.2d 267, 269 (Del. 1993) ("A court without personal jurisdiction has no power to dismiss a complaint for failure to state a claim.").

[4] *Ryan v. Gifford*, 935 A.2d 258, 265 (Del. Ch. 2007).

favor.'"[5]  "The court engages in a two-step analysis:  the court must first determine that service of process is authorized by statute and then must determine that the exercise of jurisdiction over the nonresident defendant comports with traditional due process notions of fair play and substantial justice."[6]  Where, as here, "the court makes the determination regarding personal jurisdiction without an evidentiary hearing, it will consider the pleadings, affidavits and evidence of record and will draw all reasonable inferences therefrom in favor of the plaintiff."[7]

As an initial matter, I reject the argument that Mammano waived the defense that the Court lacks jurisdiction over her.  BrandRep argues she did so "by voluntarily submitting to the Court's jurisdiction and obtaining benefits through the Status Quo Order without ever raising a personal jurisdiction defense."[8]  But as Mammano points out, the parties agreed to language in that Status Quo Order providing "[t]he Parties reserve all rights, claims and defenses and shall not be deemed to have waived any rights, claims and defenses by executing this Stipulation

---

[5]  *Baier v. Upper New York Inv. Co. LLC*, 2018 WL 1791996, at *5 (Del. Ch. Apr. 16, 2018) (quoting *Prima facie case*, BLACK'S LAW DICTIONARY (10th ed. 2014)).
[6]  *Ryan*, 935 A.2d at 265.
[7]  *EBP Lifestyle Brands Hldgs., Inc. v. Boulbain*, 2017 WL 3328363, at *3 (Del. Ch. Aug. 4, 2017).
[8]  D.I. 116 at 1.

and [Proposed] Order."[9] Mammano also asserted her defense promptly.[10] BrandRep remains bound by the reservation of rights in the Status Quo Order. I conclude Mammano did not waive her personal jurisdiction defense.

A. Statutory Jurisdiction

BrandRep sought to serve Mammano pursuant to Delaware's long-arm statute, 10 *Del. C.* § 3104.[11] That statute provides that a nonresident who commits certain acts or causes certain injuries in Delaware is subject to jurisdiction in Delaware. In relevant part, it states:

> (c) . . . a [Delaware] court may exercise personal jurisdiction over any nonresident . . . who in person or through an agent:
>
> (1) Transacts any business or performs any character of work or service in [Delaware] . . . .

Mammano formed defendant Business Solutions, a Delaware LLC, in May 2017.[12]

"Not surprisingly, Delaware courts have held consistently that forming a Delaware

---

[9] D.I. 11 ¶ 11.

[10] BrandRep conceded at argument that Mammano moved to dismiss within the time provided by the Court's rules. This fact also distinguishes the only Delaware authority BrandRep cites, *Hornberger Management Co. v. Haws & Tingle General Contrs., Inc.*, 768 A.2d 983 (Del. Super. 2000). In *Hornberger*, the defendant stipulated to extending the time to file case dispositive motions, and then failed to move on personal jurisdiction grounds before the agreed-upon deadline. 768 A.2d at 989.

[11] D.I. 5. BrandRep received the summons, but has not filed an affidavit of service. It is unclear whether BrandRep served the summons, or Mammano's counsel accepted service.

[12] D.I. 85, Affidavit of Deirdre Mammano in Support of Her Motion to Dismiss ¶ 4.

entity constitutes the transaction of business within Delaware that is sufficient to establish specific personal jurisdiction under Section 3104(c)(1)."[13]  Because Section 3104(c)(1) confers specific, not general, jurisdiction, formation of a Delaware entity may only serve as the basis for personal jurisdiction where there is a sufficient nexus between that formation and the alleged wrongful conduct.[14] "When determining whether a sufficient nexus exists, the principal factor that Delaware courts have examined is the extent of the factual relationship between the formation of the Delaware entity and the cause of action."[15]

BrandRep contends Mammano formed Business Solutions in Delaware as part of the wrongful scheme to misappropriate BrandRep's trade secrets.[16]  Mammano formed Business Solutions in May 2017, while BrandRep was negotiating its sale and while defendant Chad Ruskey was allegedly talking with developers and third-party defendant Banir Ganatra about bringing BrandRep's customer relationship management ("CRM") software "officially into BrandRep."[17]  Ruskey allegedly

---

[13]  *Terramar Retail Centers, LLC v. Marion #2-Seaport Tr. U/A/D/ June 21, 2002*, 2017 WL 3575712, at *5 (Del. Ch. Aug. 18, 2017).
[14]  *Id.* at *5-6.
[15]  *Id*. at *6.
[16]  D.I. 116 at 12.
[17]  *Id*. Ex. 3; *id*. Ex. 7, ¶ 20; *see also id*. Ex. 6 (executed Confidentiality and IP Assignment Agreement).  BrandRep's Confidential Information Memorandum is dated February 2017. *Id*. Ex. 2.

took BrandRep's trade secrets, gave them to defendant Employer Advertising, then sold his ownership in BrandRep.[18]   Mammano then allegedly transferred Employer Advertising's assets, including BrandRep's misappropriated trade secrets, to Business Solutions.[19]   I refer to Employer Advertising and Business Solutions collectively as the "Entity Defendants."   BrandRep also alleges the defendants attempted to conceal their actions, including by changing trade names and limiting what employees could say about the services Business Solutions offered.[20]

Giving BrandRep the benefit of all reasonable inferences, as I must, I conclude these allegations provide a sufficient nexus between Mammano's formation of Business Solutions in Delaware and the alleged scheme to take BrandRep's trade secrets and use them to compete with BrandRep.[21]   While that scheme allegedly existed before Mammano formed Business Solutions, the company's formation allegedly furthered "the conspiratorial goal" of covertly using BrandRep's trade secrets to compete with BrandRep.[22]   Mammano's act of forming a Delaware entity

---

[18]   D.I. 19 ¶ 56; D.I. 85, Mammano Affidavit ¶¶ 3, 9.
[19]   D.I. 116 at 5, Ex. 8.
[20]   D.I. 116 at 15; *id*. Ex. 4 ¶¶ 8, 17.
[21]   *See Terramar Retail Centers*, 2017 WL 3575712, at *6 ("Whether a sufficient nexus exists necessarily depends on the nature of the claim. If the claim turns on a wrongful conduct or scheme, then the formation of the Delaware entity must relate to the wrongful conduct or scheme before it can support the exercise of specific personal jurisdiction.").
[22]   *Microsoft Corp. v. Amphus, Inc.*, 2013 WL 5899003, at *12 (Del. Ch. Oct. 31, 2013).

as a contribution toward that scheme allows the Court to exercise jurisdiction over her under Section 3104, so long as jurisdiction is constitutionally permissible.

### B.    Constitutional Due Process

Jurisdiction over Mammano must be not only statutorily compliant, but also constitutional.  The constitutional analysis asks "whether subjecting the nonresident defendant to jurisdiction would violate due process."[23]  BrandRep asserts the Court has jurisdiction over Mammano under the conspiracy doctrine.

Conspiracy jurisdiction for BrandRep's aiding and abetting claim is governed by the five-part *Istituto Bancario* test.[24]  That test requires a plaintiff to show:

> (1) a conspiracy to defraud existed; (2) the defendant was a member of that conspiracy; (3) a substantial act or substantial effect in furtherance of the conspiracy occurred in the forum state; (4) the defendant knew or had reason to know of the act in the forum state or that acts outside the forum state would have an effect in the forum state; and (5) the act in, or effect on, the forum state was a direct and foreseeable result of the conduct in furtherance of the conspiracy.[25]

---

[23] *Matthew v. Fläkt Woods Grp. SA*, 56 A.3d 1023, 1027 (Del. 2012).

[24] *Benihana of Tokyo, Inc. v. Benihana, Inc.,* 2005 WL 583828, at *7 (Del.Ch. Feb. 4, 2005), *aff'd*, 906 A.2d 114 (Del. 2006); *see Malpiede v. Townson,* 780 A.2d 1075, 1098 n. 82 (Del. 2001) (referencing underlying claim for breach of fiduciary duty and stating "[a]lthough there is a distinction between civil conspiracy and aiding and abetting, we do not find that distinction meaningful here"); *Allied Capital Corp. v. GC-Sun Hldgs., L.P.*, 910 A.2d 1020, 1038 (Del. Ch. 2006) (explaining "that in cases involving the internal affairs of corporations, aiding and abetting claims represent a context-specific application of civil conspiracy law").

[25] *Istituto Bancario Italiano SpA v. Hunter Eng'g Co.*, 449 A.2d 210, 225 (Del. 1982).

"[I]t now is well-settled that 'a claim for aiding and abetting a breach of fiduciary duty satisfies the first and second elements of the *Istituto Bancario* test.'"[26] I focus on the third, fourth, and fifth elements of the *Istituto Bancario* test.

The third element is "a substantial act or substantial effect in furtherance of the conspiracy occurred in the forum state." It is "well-established that a party that forms a Delaware entity as part of a wrongful scheme has constitutionally sufficient 'minimum contacts' with Delaware for purposes of personal jurisdiction."[27] As explained above, BrandRep has alleged Mammano formed a Delaware entity as one part of the scheme by which the defendants misappropriated BrandRep's software, in a way that allowed Ruskey to benefit from selling his interest in BrandRep. The allegations Mammano formed an entity that contributed to the unlawful misappropriation and competition satisfy the third element.

"The fourth and fifth elements of the [*Istituto Bancario*] test evaluate whether 'the defendant knew or had reason to know of the act in the forum state' and whether such act 'was a direct and foreseeable result of the conduct in furtherance of the

---

[26] *Hospitalists of Delaware, LLC v. Lutz*, 2012 WL 3679219, at *5 (Del. Ch. Aug. 28, 2012) (quoting *Hamilton P'rs, L.P. v. England*, 11 A.3d 1180, 1198 (Del. Ch. 2010)); *see also Hamilton P'rs*, 11 A.3d at 1197 ("Although *Istituto Bancario* literally speaks in terms of a 'conspiracy to defraud,' the principle is not limited to that particular tort.").
[27] *Microsoft Corp.*, 2013 WL 5899003, at *9.

conspiracy.'"[28] "These elements require allegations 'from which one can infer that a foreign defendant knew or should have known that the conspiracy would have a Delaware nexus.'"[29] BrandRep alleges Mammano formed a Delaware entity to use and profit from the misappropriated trade secrets of BrandRep, another Delaware entity.[30] Creating Business Solutions thus was allegedly "one of the means by which the conspiracy was effectuated."[31] The alleged resulting harm to BrandRep was direct and not only foreseeable, but also intended.[32] BrandRep's allegations satisfy the fourth and fifth elements of the *Istituto Bancario* test.

Mammano argues that the alleged misappropriation occurred years before she formed Business Solutions in Delaware. This does not change my conclusion that

---

[28] *Konstantino v. AngioScore, Inc.*, 2015 WL 5770582, at *10 (Del. Ch. Oct. 2, 2015) (quoting *Istituto Bancario*, 449 A.2d at 225).

[29] *Konstantino*, 2015 WL 5770582, at *10 (quoting *Fläkt Woods*, 56 A.3d at 1024).

[30] D.I. 116 at 13-14.

[31] *Fläkt Woods*, 56 A.3d at 1029.

[32] By satisfying the fourth and fifth elements, BrandRep has also met the requirements of any overlapping "minimum contacts" analysis that would be needed to analyze Count IV. *See Virtus Capital*, 2015 WL 580553, at *12 ("The fourth and fifth *Istituto Bancario* elements—whether the defendant 'knew or had reason to know of' the forum-directed activity and the degree to which the forum-directed activity was 'a direct and foreseeable result of the conduct in furtherance of the conspiracy'—speak to due process and whether there are sufficient minimum contacts between the defendant and the forum such that the defendant could reasonably anticipate being sued there."); *Microsoft Corp.*, 2013 WL 5899003, at *9 ("It is equally well-established that a party that forms a Delaware entity as part of a wrongful scheme has constitutionally sufficient 'minimum contacts' with Delaware for purposes of personal jurisdiction.").

BrandRep adequately alleged Mammano formed a new Delaware entity that participated in the existing scheme. Mammano also relies on cases that did not involve a party incorporating an entity in Delaware as part of the alleged conspiracy. In *Iotex Communications, Inc. v. Defries*, the court analyzed acts "wholly outside" Delaware, and distinguished cases where events, such as filings with the Secretary of State, "actually took place in Delaware."[33] Similarly, in *In re Bracket Holding Corp. Litigation*, none of the "conduct [was] alleged to have occurred in Delaware."[34] These cases do not bear on Mammano's creation of a Delaware entity.[35]

I conclude the Court's exercise of personal jurisdiction over Mammano comports with due process.[36]

---

[33] 1998 WL 914265, at *7-8 (Del. Ch. Dec. 21, 1998).

[34] 2017 WL 3283169, at *1 (Del. Super. Ct. July 31, 2017).

[35] Mammano also cites and attempts to distinguish *Terramar Retail Centers, LLC v. Marion #2-Seaport Tr. U/A/D/ June 21, 2002*, 2017 WL 3575712 (Del. Ch. Aug. 18, 2017). *See* D.I. 142 at 10 n.2. *Terramar* supports BrandRep here because the entity Mammano formed relates "to the wrongful conduct or scheme." *Terramar Retail Centers, LLC*, 2017 WL 3575712, at *8.

[36] Much of Mammano's reply brief focuses on establishing her rights, or the rights of her entities, to the software, including its development history and work Mammano and Ruskey did at their former business. D.I. 142 at 1-6. These arguments would require me to resolve factual disputes as to whether misappropriation actually occurred. That is improper at the motion to dismiss stage.

## II.     Plaintiffs Stated Claims For Breach Of Fiduciary Duty, Aiding And Abetting, And Trade Secret Misappropriation.

In considering a motion to dismiss under Rule 12(b)(6), I must "accept all well-pleaded factual allegations in the Complaint as true, accept even vague allegations in the Complaint as 'well-pleaded' if they provide the defendant notice of the claim, [and] draw all reasonable inferences in favor of the plaintiff."[37] I must "deny the motion unless the plaintiff could not recover under any reasonably conceivable set of circumstances susceptible of proof."[38]

### A.     Count I:  Breach of Fiduciary Duty

Count I is a breach of fiduciary duty claim asserted by BrandRep, LLC against Ruskey.[39] Ruskey moved to dismiss this claim, arguing BrandRep alleged Ruskey was a fiduciary only of BrandRep Inc., as distinguished from BrandRep, LLC.[40] Ruskey argues BrandRep, LLC cannot bring the claim on behalf of BrandRep Inc. because BrandRep Inc. was "not a plaintiff and there is no allegation that BrandRep

---

[37] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Hldgs. LLC*, 27 A.3d 531, 536 (Del. 2011).

[38] *Id.*

[39] D.I. 19 ¶¶ 73-78.

[40] D.I. 79 at 10-11.  "A claim for breach of fiduciary duty requires proof of two elements: (1) that a fiduciary duty existed and (2) that the defendant breached that duty." *Beard Research, Inc. v. Kates*, 8 A.3d 573, 601 (Del. Ch. 2010).  Ruskey argues BrandRep, LLC failed to satisfy only the first element.

can bring a claim on its behalf."[41]  The dispute boils down to whether BrandRep pled

sufficient facts about its corporate history, in which BrandRep Inc. converted to

BrandRep, LLC.

The Amended Complaint alleges that "Ruskey was a director and officer of

BrandRep [Inc.] from 2012 until approximately December 18, 2017,"[42] and that

"[a]s a director and officer of BrandRep, Ruskey owed BrandRep fiduciary duties of

care and loyalty."[43]  The Amended Complaint further alleges that on December 18,

2017, Ganatra and Ruskey sold their ownership interests in BrandRep to BrandRep

Holdings, LLC, in a transaction governed by a Membership Interest Purchase and

Contribution Agreement ("MIPC").[44]  The MIPC was attached to the Verified

Amended Complaint, and states that "[i]mmediately prior to the closing" BrandRep

Inc. "was converted into a Delaware limited liability company" and continued "as

the successor to all rights and obligations of" BrandRep Inc.[45]  Delaware law

provides that all "causes of action belonging to" a corporation that converts to an

---

[41]  D.I. 79 at 11 n.4.
[42]  D.I. 19 ¶ 6.
[43]  *Id.* ¶ 74.
[44]  *Id.* ¶¶ 7, 33, 35-40.
[45]  D.I. 19 Ex. 2, Recital B.

LLC are "vested in the other entity or business form to which such corporation has converted."[46]

"Under our liberal notice-pleading rules, all that is required is that the Defendants have notice of the claims against them."[47]  In other words, "all evidentiary facts need not be pleaded under our practice of notice pleading."[48]  I requested supplemental briefing from Ruskey for authority supporting his argument that BrandRep's claim must be dismissed due to failure to adequately plead its corporate history.  His response was not convincing.[49]  I conclude the Amended Complaint and attached documents put Ruskey on notice that he allegedly owed fiduciary duties to BrandRep Inc.; that BrandRep Inc. converted to BrandRep, LLC; and that BrandRep, LLC asserted Ruskey had breached fiduciary duties owed to BrandRep Inc.  Ruskey's motion to dismiss Count I is denied.

---

[46] 8 *Del. C.* § 266(h); *see also* 6 *Del. C.* § 18-214(e) ("The conversion of any other entity into a domestic limited liability company shall not be deemed to affect . . . the personal liability of any person incurred prior to such conversion.").

[47] *Simplexity, LLC v. Zeinfeld*, 2013 WL 5702374, at *7 n.74 (Del. Ch. Oct. 17, 2013); *see also* Ct. Ch. R. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

[48] *Citron v. Lindner*, 1985 WL 44689, at *2 (Del. Ch. Nov. 14, 1985).

[49] D.I. 196.

B.     Count III:  Aiding and Abetting Breach of Fiduciary Duty

Count III alleges Mammano and the Entity Defendants aided and abetted Ruskey's breaches of fiduciary duty.[50]  BrandRep must plead four elements:  "(i) the existence of a fiduciary relationship, (ii) a breach of the fiduciary's duty, (iii) knowing participation in the breach by the non-fiduciary defendants, and (iv) damages proximately caused by the breach."[51]  Mammano and the Entity Defendants argue BrandRep failed to plead the first and third elements.  I concluded above that BrandRep adequately pled that Ruskey owed fiduciary duties.  I now turn to the knowing participation element.

---

[50]  D.I. 19 ¶¶ 86-95.  Both BrandRep, LLC and BrandRep Holdings asserted Count III.  I previously granted the motion to dismiss BrandRep Holdings' breach of fiduciary duty claim:  BrandRep Holdings' aiding and abetting claim is therefore also dismissed.  This decision relates only to BrandRep, LLC's aiding and abetting claim.

Count III is pled against Employer Ad Network, BeRanked, and Ad.IQ, but it is clear that BrandRep's allegations against those trade names bear on the two Entity Defendants.  The Complaint alleges that Employer Advertising did business as Employer Ad Network and BeRanked, and that Business Solutions did business as BeRanked and Ad.IQ.  D.I. 19 ¶¶ 8-9.  Other than in defining the entities, BrandRep uses the "doing business as" ("d/b/a") names, rather than the entities' legal names, throughout the Complaint.  BrandRep alleges the use of "multiple unincorporated, unregistered trade names," made "it extremely difficult to determine the conduct of any particular 'business' and identify the people involved."  *Id*. ¶ 61.  By defining the entities and using the d/b/a names, BrandRep linked its allegations to the Entity Defendants.

[51]  *In re Rural Metro Corp.*, 88 A.3d 54, 80 (Del. Ch. 2014) (citing *Malpiede*, 780 A.2d at 1096).

"Knowing participation in a [director's] fiduciary breach requires that the third party act with the knowledge that the conduct advocated or assisted constitutes such a breach."[52] "[T]he element of 'knowing participation' requires that the secondary actor have provided 'substantial assistance' to the primary violator."[53] "A court's analysis of whether a secondary actor 'knowingly' provided 'substantial assistance' is necessarily fact intensive."[54] Where a defendant secondary actor is an entity, the knowledge of an individual fiduciary or agent may be imputed to that entity.[55] Efforts to conceal competition can support knowing participation.[56] Indeed,

---

[52] *Malpiede*, 780 A.2d at 1097.

[53] *In re Dole Food Co., Inc. S'holder Litig.*, 2015 WL 5052214, at *41 (Del. Ch. Aug. 27, 2015).

[54] *Id*. at *42.

[55] *See Carr v. New Enter. Assocs., Inc.*, 2018 WL 1472336, at *16 (Del. Ch. Mar. 26, 2018) ("A director's knowledge and participation in a breach may be imputed to a non-fiduciary entity for which that director also serves in a fiduciary capacity."); *Cumming v. Edens*, 2018 WL 992877, at *26 (Del. Ch. Feb. 20, 2018) (describing scheme facilitated through various "subsidiaries named as aiders and abettors" and concluding that "[u]nder basic principles of agency, all of their knowledge is imputed to the [] entities they served as agents"); *Triton Const. Co. v. E. Shore Elec. Servs., Inc.*, 2009 WL 1387115, at *16 (Del. Ch. May 18, 2009) ("Eastern also is liable for aiding and abetting because the knowledge and conduct of Elliott, its controlling officer, are imputed to it."); *see also Carsanaro v. Bloodhound Techs., Inc.*, 65 A.3d 618, 638 (Del. Ch. 2013) (finding the knowing participation element was adequately pled because knowledge of fiduciaries who were alleged to have breached their duties could be imputed to other entities where the fiduciaries also served as officers, agents, or principals).

[56] *Triton Const. Co.*, 2009 WL 1387115, at *16.

"in some circumstances, the [defendant's] actions may be so suspect as to permit, if proven, an inference of knowledge of an intended breach of trust."[57]

The Entity Defendants allegedly concealed their use of BrandRep's software. BrandRep alleges Business Solutions' "management personnel have told [its] sales representatives that BrandRep is a competitor," and instructed them to notify certain Business Solutions personnel when "they had sold a product to a customer who had also recently been contacted by BrandRep."[58] Business Solutions also allegedly instructed employees to misrepresent to third parties that Business Solutions "was *not* in the search engine optimization business," and that it was based out of Las Vegas, rather than Orange County, California, where Ruskey and Mammano allegedly reside.[59]

BrandRep also alleges Ruskey's knowledge that he breached his fiduciary duties by misappropriating BrandRep's software is imputed to the Entity Defendants because Ruskey "owned and/or controlled" the Entity Defendants.[60] Ruskey

---

[57] *Id.*

[58] D.I. 19 ¶¶ 50, 67.

[59] *Id.* ¶¶ 62-63.

[60] D.I. 19 ¶ 43. Though Mammano submitted an affidavit stating Ruskey no longer owns Employer Advertising, and never owned Business Solutions, I cannot consider her affidavit in deciding the motion to dismiss under Rule 12(b)(6). *See Mizel v. Connelly*, 1999 WL 550369, at *5 (Del. Ch. July 22, 1999) (refusing to consider affidavit submitted by defendant concerning control of company because a motion to dismiss "is directed to the face of the complaint"); *see also Orman v. Cullman*, 794 A.2d 5, 15 (Del. Ch. 2002) ("As

purportedly misled BrandRep by explaining that "Employer [Advertising] was merely an online job recruiting site, not a BrandRep competitor," and that misrepresentation induced BrandRep to "ma[k]e substantial payments directly to Employer Advertising on Ruskey's behalf."[61]   I conclude it is reasonably conceivable that Ruskey owned or controlled the Entity Defendants, such that his knowledge of his alleged breaches of fiduciary duties owed to BrandRep is imputed to both Entity Defendants.[62]   Because Ruskey was "the fiduciary and primary wrongdoer" and also allegedly "control[led] [the Entity Defendants] or [] occupie[d] a sufficiently high position that his knowledge is imputed to" those entities, the knowing participation test is "easier to satisfy."[63]   Based on Ruskey's imputed knowledge and the Entity Defendants' alleged concealment, it is reasonably

---

a general rule, when deciding a Rule 12(b)(6) motion, the Court is limited to considering only the facts alleged in the complaint and normally may not consider documents extrinsic to it.").   Based only on the allegations in the Amended Complaint, it is reasonably conceivable that Ruskey owned or controlled the Entity Defendants.   That is because Ruskey allegedly used those entities to misappropriate trade secrets and compete with BrandRep, and it is reasonable to infer that he used entities through which he would have profited.   Whether Ruskey actually owned or controlled the Entity Defendants will be determined on a factual record as the case progresses.

[61]  D.I. 19 ¶ 43.

[62]  *See supra* n. 55.

[63]  *In re PLX Tech. Inc. S'holders Litig.*, 2018 WL 5018535, at *49 (Del. Ch. Oct. 16, 2018).

conceivable that the Entity Defendants knowingly participated in Ruskey's alleged breaches of fiduciary duty.

BrandRep also alleges Mammano knowingly participated in Ruskey's breaches of fiduciary duty. Mammano is allegedly Ruskey's "close business associate."[64] It is reasonably conceivable that Mammano knew Ruskey was a BrandRep fiduciary. Mammano, as the CEO of the Entity Defendants, also would have known about their alleged roles in Ruskey's misappropriation of BrandRep's information, and their subsequent competition and concealment of that competition.[65] BrandRep alleges, reasonably in my view because of Mammano's role as CEO, that Mammano caused Business Solutions "to take steps to attempt to conceal Ruskey's misconduct."[66] I conclude it is reasonably conceivable that Mammano knowingly participated in Ruskey's alleged breaches of fiduciary duty.

Finally, the defendants' alleged actions constitute substantial assistance. Ruskey allegedly monetized his misappropriation through the Entity Defendants, by competing with BrandRep and taking its customers. Mammano, as CEO of those entities, allegedly participated in and benefited from that competition.[67] As

---

[64] D.I. 19 ¶ 46.
[65] *Id.* Mammano's knowledge as CEO is also imputed to both Employer Advertising and Business Solutions.
[66] D.I. 19 ¶ 91.
[67] D.I. 19 ¶¶ 46, 68.

discussed in the context of personal jurisdiction, she allegedly formed Business Solutions in an overt act in furtherance of that competition. "At this preliminary stage of the litigation, I cannot rule out the possibility" that the defendants knew of Ruskey's fiduciary position and obligations to BrandRep, and yet helped him breach his duties because it benefited them.[68] Their motion to dismiss Count III is denied.

### C. Count IV: Misappropriation of Trade Secrets

In Count IV, BrandRep alleges trade secret misappropriation by the defendants.[69] To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead four elements:

> (i) A trade secret exists. (ii) The plaintiff communicated the trade secret to the defendant. (iii) The communication was made pursuant to an express or implied understanding that the defendant would maintain the secrecy of the information. (iv) The trade secret has been misappropriated within the meaning of that term as defined in . . . [the Delaware Uniform Trade Secrets Act].[70]

---

[68] *Stewart v. Wilm. Tr. SP Servs., Inc.*, 112 A.3d 271, 321 (Del. Ch. 2015), *aff'd*, 126 A.3d 1115 (Del. 2015).

[69] D.I. 19 ¶¶ 96-101.

[70] *Alarm.com Hldgs., Inc. v. ABS Capital P'rs Inc.*, 2018 WL 3006118, at *6-7 (Del. Ch. June 15, 2018). The defendants argued for the first time in their reply brief that BrandRep did "not plead any specific trade secrets." D.I. 130 at 5. This argument fails for several reasons. First, as required by Delaware law, BrandRep provided a statement of trade secrets. D.I. 18; *see SmithKline Beecham Pharm. Co. v. Merck & Co.*, 766 A.2d 442, 447 (Del. 2000). The defendants challenged the sufficiency of BrandRep's statement of trade secrets and argued BrandRep had not identified its trade secrets with reasonable particularity. D.I. 30 at 5-14. Vice Chancellor Glasscock denied that motion, ruling BrandRep satisfactorily identified its trade secrets. D.I. 83 at 23-25. The parties have conducted discovery and briefed BrandRep's request for a preliminary injunction based on

The defendants' motion to dismiss Count IV focuses on the fourth element. The

Delaware Uniform Trade Secrets Act defines misappropriation as follows:

> a. Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
>
> b. Disclosure or use of a trade secret of another without express or implied consent by a person who:
>
>> 1. Used improper means to acquire knowledge of the trade secret; or
>>
>> 2. At the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade was:
>>
>>> A. Derived from or through a person who had utilized improper means to acquire it;
>>>
>>> B. Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or
>>>
>>> C. Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or
>>
>> 3. Before a material change of the person's position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.[71]

---

those same disclosures. Second, the defendants waived this argument by not raising it until their reply brief. *City of Miami Gen. Emps.' & Sanitation Empls.' Ret. Tr. v. C & J Energy Servs., Inc.*, 2018 WL 508583, at *6 (Del. Ch. Jan. 23, 2018).

[71] 6 *Del. C.* § 2001(2).

Because "[m]isappropriation and misuse can rarely be proved by convincing direct evidence,"[72] a plaintiff can prove its case using circumstantial evidence.[73] Indeed, "in most cases 'plaintiffs must construct a web of perhaps ambiguous circumstantial evidence from which the trier of fact may draw inferences which convince him that it is more probable than not that what plaintiffs allege happened did in fact take place.'"[74] This acceptance of circumstantially supported inferences is compounded on a motion to dismiss, where plaintiffs "need only plead sufficient facts to make it reasonably conceivable that circumstances exist from which the necessary inferences can be drawn."[75]

BrandRep alleges that Ruskey and the third-party developers he worked with were the only individuals who "could access the source code."[76] Ruskey allegedly owned or controlled the Entity Defendants while he had access to BrandRep's source code. The software used by the Entity Defendants is alleged to "appear[] and function[] nearly identically to" BrandRep's software, including "several

---

[72] *Alarm.com Hldgs.*, 2018 WL 3006118, at *7 (quoting *Greenberg v. Croydon Plastics Co., Inc.*, 378 F. Supp. 806, 814 (E.D. Pa. 1974)).
[73] *Id.*
[74] *Id.* (quoting *Merck & Co. v. SmithKline Beecham Pharm. Co.*, 1999 WL 669354, at *20 (Del. Ch. Aug. 5, 1999)).
[75] *Id.*; *see also Cabot Corp. v. Fansteel Inc.*, 1990 WL 181960, at *3 (Del. Ch. Nov. 21, 1990) ("Here the specifics of the secrets and the alleged misappropriation are identified. This is enough.").
[76] D.I. 19 ¶¶ 31, 54, 56.

distinguishing features that are identical to features of BrandRep's" software.[77] And the Entity Defendants' software "targeted the same potential customers as" BrandRep's, which allegedly indicates it operates in the same way as BrandRep's.[78] Because Ruskey is the only alleged link between BrandRep and the Entity Defendants, and one of a very few persons with access to BrandRep's source code, it is reasonably conceivable that he was the reason the companies had nearly identical source code.[79]

BrandRep adequately alleges misappropriation by Mammano and the Entity Defendants under 6 *Del. C.* § 2001(2)(b)(2), under the theory that the defendants had reason to know they were acquiring BrandRep's trade secrets by improper means because they knew Ruskey had a duty to maintain their secrecy. In other words, BrandRep alleges those defendants had something they knew they should not. The Entity Defendants, through Ruskey's allegedly imputed knowledge, would have known they should not have had BrandRep's source code.[80] And as discussed above, Business Solutions allegedly went to great lengths to conceal how it competed with

---

[77] *Id.* ¶ 53.

[78] *Id.* ¶ 56.

[79] This link also distinguishes this case from *Accenture Glob. Servs. GMBH v. Guidewire Software Inc.*, 581 F. Supp. 2d 654 (D. Del. 2008). There, the only allegation was that the defendant "somehow" acquired the trade secret. *Id.* at 663. Here, BrandRep specifically alleges that Ruskey improperly took its source code and shared it with the other defendants.

[80] *See supra* n. 55.

BrandRep. It is reasonably conceivable that Mammano, as its CEO, would know about that concealment, and that as Ruskey's close business associate, she would understand why the concealment was occurring.

Defendants also move to dismiss on the basis that BrandRep has failed to plead it maintained the secrecy of its software. Efforts to maintain secrecy must be "reasonable under the circumstances."[81] BrandRep alleges that its trade secrets "are not known to [its] competitors," that it "stored the source code for the CRM Software in a secured depository," that "only Ruskey and certain third-party software developers under Ruskey's control could access the source code, and that "all people with access to the CRM Software or CRM Data are subject to appropriate restrictive agreements."[82] These are sufficient allegations of reasonable efforts to maintain secrecy, distinguishable from the bare and conclusory assertions of maintaining secrecy in the cases the defendants rely upon.[83]

---

[81] 6 *Del. C.* § 2001(4)(b).

[82] D.I. 19 ¶¶ 29-31.

[83] *See MHS Capital LLC v. Goggin*, 2018 WL 2149718, at *14 (Del. Ch. May 10, 2018) ("The sole allegation in the Complaint on this score is that 'ECM made efforts to maintain the secrecy of the [i]nformation, and these efforts were reasonable under the circumstances.' . . . No facts are pled about ECM's efforts to maintain secrecy.").

### III.  <u>Conclusion</u>

For these reasons, the motions to dismiss Counts I, III, and IV are denied.

**IT IS SO ORDERED.**

Sincerely,

*/s/ Morgan T. Zurn*

Vice Chancellor

MTZ/ms