# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| HERBERT TISHER, JAMES STARLING, JR., and PAMELA STARLING, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | C.A. No. K18C-05-011 RLG |
| | ) | |
| INSYS THERAPEUTICS, INC., et al. | ) ) | |
| | ) | |
| Defendants. | ) | |

Submitted:  August 9, 2024[1]
Decided:  November 22, 2024

## <u>MEMORANDUM OPINION AND ORDER</u>

### *On Defendant Kapoor's Motion to Dismiss – GRANTED.*

Philip T. Edwards, Esquire (argued) and Scott Himelein, Esquire, Murphy & Landon, Wilmington, Delaware.  *Attorneys for Plaintiffs.*

David Anthony, Esquire; Peter C. McGivney, Esquire; Michael W. McDermott, Esquire; Brian T. Kelly, Esquire (PHV) (argued); and Mark T. Knights, Esquire (PHV), Berger McDermott LLP, Newark, Delaware.  *Attorneys for Defendant John N. Kapoor.*

James E. Drnec, Esquire and Phillip M. Casale, Esquire, Wharton Levin Ehrmantraut & Klein, P.A., Wilmington, Delaware.  *Attorneys for Defendant Rodney Village Pharmacy.*

**GREEN-STREETT, J.**

---

[1] The transcript from the hearing in this matter was not received until September 30, 2024.

## I.     __Introduction__

In 2012, Insys, a Delaware corporation, gained Food and Drug Administration ("FDA") approval for Subsys, a fentanyl-based spray, as a treatment for "breakthrough cancer pain."[2] Defendant Dr. John Kapoor founded Insys, and served as its executive chairman when Subsys first debuted on the market.[3] Unhappy with the volume of sales of Subsys, Dr. Kapoor and other Insys executives launched an aggressive campaign to push doctors to prescribe Subsys to more patients – and at higher doses.[4] Many of the resulting prescriptions were illegal, and led to addiction problems for many patients.[5] Dr. Kapoor and several Insys executives were prosecuted and found guilty in federal court on charges related to conspiracy to distribute Subsys improperly.[6] Two patients prescribed Subsys improperly in Delaware – Herbert Tisher and James Starling Jr. – filed the instant complaint seeking compensation for the alleged damages they suffered due to their use of and resulting addiction to Subsys.

---

[2] United States v. Simon, 12 F.4th 1, 15 (1st Cir. 2021).

[3] Id.

[4] Id.

[5] Id.

[6] Id.

Dr. Kapoor filed the instant motion under Del. Super. Ct. Civ. R. 12(b)(2), contending this Court lacks personal jurisdiction over him.[7]  Dr. Kapoor asserts "he has no meaningful contact with Delaware."[8]  This Court held oral argument on Dr. Kapoor's motion on April 14, 2023.[9]  The Court granted Plaintiffs the opportunity to pursue limited jurisdictional discovery regarding Dr. Kapoor.[10]  At the conclusion of that discovery, the parties submitted supplemental briefs, and Dr. Kapoor renewed his Motion to Dismiss.[11]  As Plaintiffs have not cited specific facts tying Dr. Kapoor to Delaware, his Motion to Dismiss is **GRANTED**.

## II.     Factual and Procedural Background

Dr. Kapoor founded Insys with the intention of developing a sublingual spray.[12]  The product he helped develop came to be known as Subsys, a sublingual spray utilizing fentanyl to provide pain relief.[13]  Subsys gained FDA approval as a

---

[7] Def.'s Opening Br. in Supp. of Mot. to Dismiss, D.I. 104 (Aug. 30, 2022) (Dr. Kapoor's motion also included argument about subject matter jurisdiction as to a claim for negligent misrepresentation.  Plaintiffs conceded this Court lacks jurisdiction over that claim.).

[8] Id. at 1.

[9] D.I. 127 (Apr. 14, 2023).

[10] Id.

[11] See Def.'s Suppl. Reply, D.I. 184 (May 31, 2024); see also Pls.' Suppl. Resp., D.I. 182 (May 13, 2024).

[12] Simon, 12 F.4th at 15.

[13] Id.

treatment for "breakthrough cancer pain" – spikes in pain for cancer patients who otherwise outpace cancer pain – and entered the marketplace shortly after gaining approval.[14]

Due to the highly addictive and dangerous properties of fentanyl, the FDA limited the initial dose of Subsys to 100 micrograms, and required any prescriber to participate in the "Risk Evaluation and Mitigation Strategy" program.[15] To combat this low dosage cap, Insys employed an aggressive marketing strategy, including targeting doctors prescribing alternative fentanyl products and persuading those doctors to prescribe Subsys instead.[16] Notably, many of the prescribing doctors were not oncologists and thus were unlikely to be prescribing Subsys for its FDA-approved use.[17]

Concerned with sales figures and the perception that many patients were only prescribed Subsys for a month before moving on to a different drug, Insys executives revamped their marketing approach.[18] This new approach consisted of pressuring doctors to prescribe Subsys at higher doses; reward sales representatives for

---

[14] Id.

[15] Id.

[16] Id.

[17] Id.

[18] Id.

successfully pushing higher doses; and a "speaker program," in which doctors who prescribed high amounts of Subsys were rewarded with compensated speaking opportunities.[19] These speaker events often had few attendees, and appear to have served mostly as a way for Insys to funnel money to doctors Insys perceived as "whales" – doctors writing a high volume of prescriptions for Subsys and at higher doses.[20]

Insys also formulated ways for prescribing doctors to get around barriers erected by insurance companies.[21] The "Insys Reimbursement Center" led Insys sales representatives to contact insurance companies to help facilitate the approval of Subsys prescriptions.[22] These sales representatives maintained a list of "diagnoses and conditions that historically had prompted particular insurers to approve Subsys."[23] Those conditions were utilized by physicians prescribing Subsys to gain insurance approval, even if the patient did not qualify for those conditions.[24]

---

[19] Id.

[20] Id.

[21] Id.

[22] Id.

[23] Id.

[24] Id.

Insys created a "super voucher" program, providing free samples of Subsys to patients whose insurance otherwise would not cover the medication.[25]

Eventually, Insys came under federal investigation and many of its executives were indicted on charges stemming from illegally pushing the sale of Subsys.[26] Dr. Kapoor and the other defendants were found guilty in federal court, and their guilty verdicts were affirmed on appeal.[27] In its decision affirming Dr. Kapoor's conviction, the First Circuit Court of Appeals noted, "[t]he record is replete with support for the proposition that Kapoor intended physicians to write medically illegitimate prescriptions. Kapoor sought out pill mill doctors (that is, doctors who were notorious for their readiness to prescribe drugs regardless of medical necessity)."[28]

Plaintiffs filed the Amended Complaint on July 3, 2018.[29] Plaintiffs allege Defendants, including Dr. Kapoor, executed "a reckless and negligent scheme" to

---

[25] Id.

[26] Id.

[27] Id.

[28] Id. at 24.

[29] Am. Compl., D.I. 4 (Jul. 3, 2018); the parties agreed to stay the matter while criminal proceedings involving several Defendants, including Dr. Kapoor, resolved. See D.I. 38 (Oct. 22, 2018); the Court lifted the stay as to Dr. Kapoor on July 18, 2022. See D.I. 99; litigation was also stayed pending resolution of Insys's bankruptcy filing. See D.I. 65 (Mar. 30, 2020).

push Subsys "to ensure huge financial gains."[30] Dr. Eva Dickinson, a Delaware-based physician, "prescribed Subsys to Plaintiffs at dangerous and unnecessary doses, resulting in their dependence and ultimate addiction to the drug."[31] Plaintiffs do not contend Dr. Kapoor ever interacted with Plaintiffs or spent any time physically in Delaware. Instead, Plaintiffs allege Dr. Kapoor, directly or through agents, managed Dr. Dickinson and directed her to overprescribe Subsys.[32]

Plaintiffs argue Dr. Kapoor exercised "tight control" over Insys, and directed sales representatives to persuade or pressure doctors into overprescribing Subsys.[33] Plaintiffs point to the "speakers program" employed by Insys, which incentivized doctors to prescribe Subsys to patients who had no need for the drug, as an example of the tactics used by Insys to push sales of Subsys illegally.[34]

At the time of the events alleged in the Amended Complaint, Dr. Kapoor resided in Arizona, as did Insys's headquarters.[35] The Amended Complaint groups Dr. Kapoor into a category defined as the "Corporate Defendants," but does not make

---

[30] Pls.' Resp. in Opp'n to Mot. to Dismiss at 1, D.I. 118 (Nov. 15, 2022).

[31] Id.

[32] Id. at 6-7.

[33] Id. at 5.

[34] Id. at 6-7.

[35] Am. Compl. at 3-4.

any individualized allegations against Dr. Kapoor.[36]  Based on Dr. Kapoor's nonresident status in Delaware, and the lack of individualized allegations regarding his conduct in Delaware, Dr. Kapoor moved to dismiss Plaintiffs' claims against him for lack of personal jurisdiction.[37]

Plaintiffs posited a material dispute existed as to whether Delaware's long-arm statute, 10 Del. C. § 3104(c), conferred jurisdiction over Dr. Kapoor.[38] Plaintiffs argued "prior to discovery, it [was] reasonable to conceive that Dr. Kapoor was responsible for the incorporation of Insys in Delaware," conferring jurisdiction under §3104(c)(1).[39]  Plaintiffs further reasoned Dr. Kapoor caused tortious injury in Delaware through agents connected to him via his control over Insys, conferring jurisdiction under § 3104(c)(3).[40]  Alternatively, Plaintiffs asserted "Dr. Kapoor is subject to jurisdiction under the conspiracy theory of personal jurisdiction."[41]

---

[36] See id. (Dr. Kapoor is mentioned by name twice: ¶ 17, indicating Dr. Kapoor's address; and ¶ 18, including Dr. Kapoor in the definition of "Corporate Employees.").

[37] Def.'s Opening Br. in Supp. of Mot. to Dismiss at 3-4.

[38] Pls.' Resp. in Opp'n to Mot. to Dismiss at 3.

[39] Id. at 5.

[40] Id. at 5-6.

[41] Id. at 7.

This Court held oral argument on Dr. Kapoor's Motion to Dismiss on April 14, 2023.[42] The Court found Plaintiffs demonstrated Dr. Kapoor could conceivably be subjected to the Court's jurisdiction. Accordingly, the Court permitted Plaintiffs to engage in limited jurisdictional discovery.[43]

To that end, Plaintiffs deposed Dr. Kapoor on December 1, 2023.[44] Dr. Kapoor also provided written discovery to Plaintiffs.[45] Following Dr. Kapoor's deposition, he requested the Court conclude jurisdictional discovery and rule on his pending Motion to Dismiss.[46] Plaintiffs opposed closing jurisdictional discovery because they intended to depose Alec Burlakoff, Dr. Kapoor's direct agent.[47] At a status conference on January 5, 2024, the Court permitted Plaintiffs to proceed with the deposition of Mr. Burlakoff.[48] On April 11, 2024, the Court outlined a schedule for supplemental briefing, and ordered oral argument on Dr. Kapoor's Motion to Dismiss.[49]

---

[42] D.I. 127 (Apr. 14, 2023).

[43] Id.

[44] See Plaintiffs' Notice of Deposition of John Kapoor, D.I. 162 (Oct. 13, 2023).

[45] Def.'s Suppl. Reply at 2.

[46] Letter to the Court and Renewed Motion to Dismiss, D.I. 167 (Dec. 6, 2023).

[47] Letter to the Court Resp. to Defendant's Dec. 6 Letter, D.I. 168 (Dec. 12, 2023).

[48] D.I. 170 (Jan. 5, 2024).

[49] D.I. 177 (Apr. 11, 2024).

On May 13, 2024, Plaintiffs filed their Supplemental Response to Dr. Kapoor's Motion to Dismiss, incorporating facts learned through jurisdictional discovery.[50] Dr. Kapoor filed his reply to that filing on May 31, 2024, renewing his argument that Plaintiffs failed to carry their burden of establishing this Court maintains personal jurisdiction over Dr. Kapoor.[51] After receiving the parties' supplemental filings, the Court requested each party submit its position on the appropriate standard of review following the Court's allowance of jurisdictional discovery.[52] The parties provided simultaneous submissions to the Court on August 2, 2024.[53] The Court held oral argument on Dr. Kapoor's motion on August 9, 2024.[54]

## III.   **Standard of Review**

Upon a motion to dismiss under Del. Super. Ct. Civ. R. 12(b)(2), "the plaintiff bears the burden of showing a basis for the court's exercise of jurisdiction over the nonresident defendant."[55] "A motion under Rule 12(b)(2) presents a factual matter,

---

[50] D.I. 182.

[51] D.I. 184.

[52] D.I. 189 (Jul. 18, 2024).

[53] Pls.' Letter, D.I. 190 (Aug. 2, 2024); Def.'s Letter, D.I. 191 (Aug. 2, 2024).

[54] Despite requesting the transcript simultaneous – on August 12, 2024 – with oral argument, the transcript was not received until September 30, 2024.

[55] In re Asbestos Litig., 2015 WL 556434, at *3 (Del. Super. Jan. 30, 2015) (citing Werner v. Miller Tech. Mgmt. LP, 831 A.2d 318, 326 (Del. Ch. 2003)).

not a legal question alone."[56]  The Court must conduct a two-step analysis to determine if it may exercise jurisdiction over a non-resident.[57]  First, Plaintiffs must demonstrate Delaware's long-arm statute, 10 Del. C. § 3104(c), "confers jurisdiction."[58]  Second, the Court must decide if subjecting the nonresident to the Court's jurisdiction violates due process.[59]  "A nonresident defendant must have sufficient 'minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"[60]

The Court must accept all well-pleaded allegations as true, and draw all reasonable inferences in favor of Plaintiffs.[61]  Once the Court permits jurisdictional discovery, Plaintiffs "must allege specific facts supporting [their] position."[62]  "10

---

[56] Id. (citing Hart Holding Co. Inc. v. Drexel Burnham Lambert Inc., 593 A.2d 535, 538 (Del. Ch. 1991)).

[57] Matthew v. FLÄKT Woods Grp. SA, 56 A.3d 1023, 1027 (Del. 2012).

[58] Boone v. Oy Partek Ab, 724 A.2d 1150, 1154 (Del. Super. 1997), aff'd, 707 A.2d 765 (Del. 1998) (citing Outokumpu Engineering Enterprises, Inc. v. Kvaerner Enviropower, Inc., 685 A.2d 724 (Del. Super. 1996)).

[59] Matthew, 56 A.3d at 1027.

[60] Id. (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310 (1945)).

[61] Wiggins v. Physiologic Assessment Servs., LLC, 138 A.3d 1160, 1165 (Del. Super. 2016).

[62] Medi-Tec of Egypt Corp. v. Bausch & Lomb Surgical, 2004 WL 415251, at *2 (Del. Ch. Mar. 4, 2004) (internal quotations omitted) (quoting Sears Roebuck & Co. v. Sears, 744 F. Supp. 1297, 1301 (D. Del. 1990)); see also Cuppels v. Mountaire Corp., 2020 WL 3414848, at *4 (Del. Super. June 18, 2020).

Del. C. § 3104(c) is to be broadly construed to confer jurisdiction to the maximum extent possible under the Due Process Clause."[63] Caution must be exercised against "extending jurisdiction over nonresident defendants whose direct ties to Delaware are, at best, tenuous."[64]

## IV. Discussion

Plaintiffs argue two subsections of the Delaware long-arm statute independently permit the Court to exercise personal jurisdiction over Dr. Kapoor – § 3104(c)(1) and (3).[65] The Court must consider the validity of those assertions before turning to any concerns related to due process. The Court evaluates Plaintiffs' arguments against the mandate and accommodation for due process required by Delaware's long-arm statute.

### A. §3104(c)(1) does not permit the Court to exercise jurisdiction over Dr. Kapoor

10 Del. C. § 3104(c)(1) permits a court to "exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent transacts any business or performs any character of work or service in [Delaware]."

---

[63] Hercules Inc. v. Leu Tr. & Banking (Bahamas) Ltd., 611 A.2d 476, 480 (Del. 1992) (citing LaNuova D & B, S.p.A. v. Bowe Co., 513 A.2d 764, 768 (Del. 1986)).

[64] Wakley Ltd. v. Ensotran, LLC, 2014 WL 1116968, at *3 (D. Del. Mar. 18, 2014) (internal quotations omitted) (quoting Ross Holding & Mgmt. Co. v. Advance Realty Grp., 2010 WL 1838608, at *15 (Del. Ch. Apr. 28, 2010)).

[65] Pls.' Resp. in Opp'n to Mot. to Dismiss at 3.

Plaintiffs argue Dr. Kapoor, as founder and chairman, directed the incorporation of Insys in Delaware, subjecting him to personal jurisdiction under §3401(c)(1).[66] Defendants counter the mere act of incorporating in Delaware, predating "Dr. Kapoor's alleged conduct by roughly ten years," cannot confer personal jurisdiction in this case as the act of incorporation bears no relationship to the alleged misconduct.[67]

"Mere incorporation in Delaware does not give rise to specific jurisdiction."[68] Plaintiffs assert "[t]he involvement of a defendant in arranging, either directly or through an agent, for the filing of a corporate instrument in Delaware that facilitated transactions under challenge in litigation in this court have been repeatedly recognized as sufficient to constitute the transaction of business under § 3104(c)(1)."[69] In support of this contention, Plaintiffs cite one case from the Delaware Court of Chancery, Sample v. Morgan.[70] Sample can be distinguished

---

[66] Pls.' Resp. in Opp'n to Mot. to Dismiss at 4.

[67] Def.'s Suppl. Reply at 6.

[68] Marnavi S.p.A. v. Keehan, 900 F. Supp. 2d 377, 390 (D. Del. 2012); see also Sparebank 1 SR-Bank ASA v. Wilhelm Maass GMBH, 2019 WL 6033950, at *3 (Del. Super. Nov. 5, 2019) (holding a parent company choosing to incorporate its subsidiary in Delaware did not give the court personal jurisdiction over the parent company).

[69] Pls.' Resp. in Opp'n to Mot. to Dismiss at 4.

[70] 935 A.2d 1046, 1057 (Del. Ch. 2007).

from the instant case, particularly in light of the Court of Chancery's holding in <u>SDF Funding LLC v. Fry</u>.[71] The <u>Fry</u> court held "[t]o support the exercise of specific personal jurisdiction, however, the Delaware entity must have been formed *for the purpose* of engaging in the challenged transaction."[72] In <u>Sample</u>, the underlying claim involved a certificate amendment filed in Delaware.[73] As the defendants filed a corporate instrument in Delaware "that facilitated transactions under challenge in litigation," the court could exercise jurisdiction appropriately under §3401(c)(1).[74]

Although disputed, Plaintiffs have presented credible evidence that Dr. Kapoor played at least some part in incorporating Insys in Delaware. That act alone, however, does not comport with the requirement that the formation of the corporate entity be "for the purpose of engaging in the challenged transaction" to permit jurisdiction. Plaintiffs have not alleged any facts similar to those presented in <u>Sample</u> to suggest the incorporation of Insys in Delaware played any part in the actions giving rise to Plaintiffs' claims. As the act of participating in the incorporation of an entity in Delaware alone cannot place Dr. Kapoor within the

---

[71] 2022 WL 1521309, at *2 (Del. Ch. May 13, 2022).

[72] <u>Id</u>. (emphasis in original).

[73] <u>Sample</u>, 925 A.2d at 1057.

[74] <u>Id</u>.

Court's jurisdiction, the Court cannot exercise personal jurisdiction over him under §3401(c)(1).

## B. Plaintiffs fail to show specific facts to confer personal jurisdiction under §3104(c)(3)

10 Del. C. § 3104(c)(3) permits a court to "exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent causes tortious injury in the state by an act or omission in [Delaware]." Plaintiffs posit "Dr. Kapoor, through an agent, caused tortious injury in the state of Delaware."[75] Plaintiffs further assert "Dr. Dickinson's tortious conduct towards Plaintiffs in the State of Delaware shall be imputed to Dr. Kapoor."[76] In sum, Plaintiffs argue Dr. Kapoor's participation in a conspiracy centered on incentivizing doctors to overprescribe Subsys renders him liable to personal jurisdiction in any state targeted by that conspiracy, including Delaware.

Accepting as true Plaintiff's assertion that co-conspirators are akin to agents for purposes of the long-arm statute,[77] Plaintiffs must still show the conspiracy in which Dr. Kapoor engaged has a tangible connection to the injuries Plaintiffs suffered. Plaintiffs point to several possible connections, but have failed to provide

---

[75] Pls.' Resp. in Opp'n to Mot. to Dismiss at 5.

[76] Id.

[77] See Hercules at 481–82.

evidence supporting most. Plaintiffs cannot, for example, draw any direct connection between Dr. Dickinson and Dr. Kapoor. Plaintiffs cannot demonstrate Dr. Dickinson participated in the speaker program, or that her account fell under Dr. Kapoor's direct supervision. Dr. Kapoor's connections to Frank Serra, a former Insys regional sales manager, do little to aid Plaintiffs' case given Mr. Serra's employment with Insys ended before the incidents giving rise to Plaintiffs' claims occurred.

Plaintiffs allege specific facts showing (1) Insys sold Subsys in Delaware; (2) Insys utilized fraudulent tactics to incentivize doctors to overprescribe Subsys in many states; (3) Dr. Kapoor likely played some role in approving those fraudulent tactics; (4) some Insys executives monitored Dr. Dickinson's account among a list of other accounts; (5) Dr. Kapoor oversaw the accounts of some doctors; (6) Dr. Dickinson participated in Insys's Super Voucher program; (7) Dr. Dickinson prescribed Subsys to Plaintiffs; (8) Dr. Dickinson should not have prescribed Subsys to Plaintiffs; and (9) Plaintiffs suffered injuries resulting from Dr. Dickinson's prescribing of Subsys. Plaintiffs do not allege specific facts showing any direct connection between Dr. Kapoor and Delaware. Nor do they allege specific facts showing a connection between Dr. Kapoor, his agents or co-conspirators, and Delaware.

Plaintiffs essentially present the beginning and end of the story, and ask the Court to exercise personal jurisdiction absent any details in between. Plaintiffs demonstrate Dr. Kapoor participated in a conspiracy, and that injuries occurred that *could* have resulted from that conspiracy. Plaintiffs have not demonstrated any direct connection between Dr. Kapoor and Dr. Dickinson – or any intermediaries connecting the two.

Plaintiffs note Insys sales executives identified Dr. Dickinson as one of the top prescribing doctors for Subsys.[78] Plaintiffs argue this fact, coupled with testimony that Dr. Kapoor often took an interest in the accounts of other top prescribing doctors, evidences a sufficient connection. Even if the Court accepts as true the notion that Dr. Kapoor personally monitored Dr. Dickinson's account – a fact for which Plaintiffs have provided limited factual support – Plaintiffs have not provided any evidence that Dr. Kapoor's alleged monitoring of Dr. Dickinson equated to control, or even contact. Plaintiffs were given the opportunity to pursue evidence of this connection in jurisdictional discovery. Their inability to find that evidence now prevents this Court from exercising personal jurisdiction under §3104(c)(3).

---

[78] Pls.' Suppl. Resp. at 8-9.

**C.** **Plaintiffs fail to make the requisite factual showing that personal jurisdiction is appropriate under the conspiracy theory**

Plaintiffs assert that "the civil conspiracy count alone established personal jurisdiction in Delaware."[79] Plaintiffs' contention that this Court exercising personal jurisdiction over Dr. Kapoor does not violate Dr. Kapoor's right to due process rests on the conspiracy theory of personal jurisdiction. To succeed under that theory, Plaintiffs must make a factual showing that:

> (1) a conspiracy to defraud existed; (2) the defendant was a member of that conspiracy; (3) a substantial act or substantial effect in furtherance of the conspiracy occurred in the forum state; (4) the defendant knew or had reason to know of the act in the forum state or that acts outside the forum state would have an effect in the forum state; and (5) the act in, or effect on, the forum state was a direct and foreseeable result of the conduct in furtherance of the conspiracy.[80]

Dr. Kapoor's conviction in federal court for violating the Racketeer Influenced and Corrupt Organizations Act ("RICO") clearly establishes him as a member of a conspiracy to commit fraud.[81] Dr. Kapoor, along with other Insys executives, illegally incentivized pain management doctors to write off-label prescriptions for Subsys at doses above the FDA-approved starting dose.[82] At least

---

[79] See Pls.' Suppl. Resp. at 10.

[80] Istituto Bancario Italiano SpA v. Hunter Eng'g Co., 449 A.2d 210, 225 (Del. 1982).

[81] See United States v. Simon, 12 F.4th 1, 21 (1st Cir. 2021).

[82] Id. at 16-18.

one doctor, Dr. Dickinson, prescribed Subsys in Delaware to patients whose medical conditions did not necessitate a Subsys prescription.[83] If Insys incentivized Dr. Dickinson to overprescribe Subsys to her patients, Insys would have known there would likely be an effect in Delaware. The resulting effects on anyone inappropriately prescribed Subsys, a highly addictive narcotic, are both direct and foreseeable results.

Plaintiffs have not shown, however, that "a substantial act or substantial effect in furtherance of the conspiracy occurred in [Delaware]." The connection between Dr. Dickinson to the rest of the conspiracy has not been identified. Plaintiffs have provided no evidence of which sales representatives contacted her; which Insys employees recruited her or provided her incentives to overprescribe; or any tangible connection between her and any of the known conspirators.

Plaintiffs allege "Insys representatives discussed with Mr. Tisher … the propriety of his Subsys prescriptions and showed him how to use it."[84] This allegation alone does not show any improper activity by Insys in connection to Dr. Dickinson. Even if it did, there are no facts to support a connection between Dr. Kapoor and this unnamed Insys employee beyond their shared employment with

---

[83] Pls.' Suppl. Resp. at 8-9.

[84] Compl. at 10.

Insys. More must be shown to demonstrate the unnamed employee participated as a co-conspirator. As Plaintiffs cannot tie the conspiracy to Delaware factually, beyond showing that Subsys sales occurred in Delaware, they cannot satisfy the requisite elements to establish jurisdiction under the conspiracy theory.

## V.      **Conclusion**

As this Court permitted jurisdictional discovery, Plaintiffs must show more than mere allegations in support of their complaint against Dr. Kapoor. Plaintiffs must show specific facts permitting this Court to exercise personal jurisdiction over Dr. Kapoor. Plaintiffs fail to provide sufficient facts to support the exercise of personal jurisdiction over Dr. Kapoor in Delaware. Accordingly, Dr. Kapoor's Motion to Dismiss is **GRANTED**.

**IT IS SO ORDERED.**

_____
Reneta L. Green-Streett, Judge

20